*1833.*

*Dickerson*
*v.*
*Tillinghast.*

---

## DICKERSON and others *vs.* TILLINGHAST and others.

Where T., being the owner of a lot of land, gave a mortgage on the same to H., who neglected to have the mortgage recorded; and afterwards, and before the mortgage was recorded, T. conveyed the mortgaged premises to A., who had no notice of the mortgage, in payment of a precedent debt; *It was held*, that A. was not a bona fide purchaser for a valuable consideration, within the meaning of the recording act, so as to give him a preference over the prior unregistered mortgage.

To constitute a bona fide purchase, for a valuable consideration, within the meaning of the act, the purchaser must, before he had notice of the prior equity of the holder of an unrecorded mortgage, have advanced a new consideration for the estate conveyed, or have relinquished some security for a pre-existing debt due him. The mere receiving of a conveyance in payment of a pre-existing debt is not sufficient.

THIS was a bill filed by the executors of Mrs. Hughes, for the foreclosure and satisfaction of a mortgage, given to their testatrix, by the defendant Catharine Tillinghast, in June, 1815, but which was not registered or recorded until May,

*August 6.*

1818. After the giving of the mortgage, and before the registry thereof, the mortgagor conveyed a part of the mortgaged premises to the defendant Charles Tillinghast, her son, with warranty. She subsequently conveyed other parts of the mortgaged premises to some of the other defendants in this cause ; but subject to the mortgage to Mrs. Hughes. In his first answer, Charles Tillinghast alleged that his mother, for a valuable and fair consideration in money, to her in hand paid, and received by and from him, conveyed the premises to him, by a warrantee deed, in fee ; and that he neither knew of or suspected the existence of the mortgage to Mrs. Hughes, at the time of such conveyance. In his second answer, he stated that the consideration money mentioned in the deed was paid and satisfied to his mother, at Geneva, on the day of the date of that deed, out of his share of the net avails of the personal estate of his father, which was then in her hands as administratrix, or which had theretofore been received by her as such administratrix of his father. The second answer being adjudged insufficient, he put in a further answer to an amended bill and to the exceptions ; in which answer he stated that in 1800 his mother purchased a large tract of land at the head of Seneca Lake, including the premises in question in this cause, and paid a portion of the purchase money out of funds which had come to her hands as administratrix ; that the title to the land was conveyed to her brother, A. Lamb, who paid the residue of the purchase money ; that Lamb subsequently conveyed the same to her ; and that she repaid him, partly with monies which had been produced by her speculations with the property of the estate of her husband, in her hands as administratrix, and partly by monies raised by mortgage on the premises. He further stated, in his answer, that at the execution of his deed, there was justly due to him from his mother, as such administratrix, for his share of the estate of his father, the amount of the consideration money expressed in the conveyance. He therefore insisted that he was entitled to the premises conveyed to him, as a bona fide purchaser, without notice of the unregistered mortgage to Mrs. Hughes. In the answer of Catharine Tillinghast, she stated that she had reason to believe, and did believe, that her son Charles did not know

of the existence of the mortgage at the time of her conveyance to him. The cause was brought to a hearing on the bill and the answers.

*D. Lord, jun.* for the complainants. The consideration of the deed to the defendant Charles Tillinghast, was an old debt, created by a devastavit of his mother, the administratrix, and our mortgagor ; no release was executed to her on giving the deed ; no money or other thing parted with on the faith of it. And the deed contained full covenants, reserving a full remedy, by covenant under seal, if the land thus conveyed was encumbered or imperfect in title ; so that besides the land, Charles Tillinghast received a covenant under seal, in lieu of a mere liability or debt existing up to the date of the deed. And if his mother had died prior to 1819, when she conveyed the other lands, he would have had the preference of a specialty creditor, instead of a remedy on simple contract merely. The consideration of the deed to Charles Tillinghast being an antecedent debt, his remedy was in no degree impaired by his taking the land, if the latter was encumbered. This deed, therefore, did not constitute him a bona fide purchaser, within the registry act. To constitute such a purchaser, there must be a parting with money, or property, or the doing of some irrevocable act on the faith of the conveyance itself. (*See Jackson* v. *Campbell,* 19 *John. Rep.* 282, 283. *Churchill* v. *Grove,* 1 *Ch. Cas.* 35, 36.) Here, very plainly, no money or other thing was parted with, no debt was released. But a new remedy was substituted, higher than that on the old debt, by means of the covenants in the deed. The account was not even taken till July, 1819. What is a bona fide purchaser for valuable consideration ? A man who takes by devise, or who gives a bond payable 20 years hence, or who takes a mere mortgage for a desperate debt, is in some senses a *bona fide purchaser for valuable consideration.* He is in all respects bona fide. The consideration is good, so as to support the conveyance. But it is not within the meaning of the registry act. The policy of the registry act is to be looked to. It is to enable a man, about to commence a transaction with

another on the faith of his title, and to part with something on the faith thereof, to do so in safety, by examining the records. (19 *John. Rep.* 282.) A man who had already trusted another, who is to release nothing, and who might never recover his debt, does not seek for, or need this protection. His situation is not to be altered for the worse, as he is to part with nothing. The object is to make land as safely negotiable as possible. It cannot be made as much so as negotiable notes before due; yet even as to these, the bona fide consideration must be something more than a mere debt. (*Coddington* v. *Bay,* 20 *John. Rep.* 637. *Jackson* v. *Rowe,* 2 *Simons & Stuart,* 472.) The principle, as to the protection under a bona fide consideration, is derived wholly from eqity; and is such as will justify conveyances by trustees, partners, agents, &c. to persons acting with them without notice of the trust. Suppose a partner, or an agent or trustee, conveys goods to his own creditor, to pay or secure an old debt, would this be upheld? The protection also, always requires the party to deny notice at the time of payment of the money. In Charles 2d's time, a conveyance for an old debt, unaccompanied with a parting with something, took away the character of bona fide purchaser. (1 *Chan. Cas.* 48.) And no case can be since found where the defence of a bona fide purchase has been set up upon an ancient indebtedness.

Should it be alleged, that from the very purchase, in 1813, a trust by operation of law arose in favor of Charles Tillinghast, and that therefore he was entitled in equity to this land, and that equity therefore will not disturb his title; we answer, that his mother being legally the owner, and we having advanced our money on the faith of the land, without notice of the trust, we have the complete legal title, and are ourselves the bona fide purchasers, unless we have lost our title by the omission to record our mortgage. Besides, until the children of Mrs. Tillinghast chose to adopt the misapplication of the funds in question, no trust arose. It was a trust only at the election of him whose monies were misapplied—an election which Charles Tillinghast cannot be deemed to have made till he took his deed. And the mortgagor was not trustee when she made the mortgage

of the testatrix. Neither was all the money advanced, the money of the estate; so that a resulting trust did not arise.

*R. J. Hilton,* for the defendants. Charles Tillinghast is a bona fide purchaser and grantee for a valuable consideration, and without notice of the mortgage. The monies obtained on the mortgage to Mrs. Hughes were not applied in payment of the purchase monies of the premises conveyed to Charles Tillinghast.

Where a person executes a mortgage which is not recorded, and afterwards executes a deed for the same premises to a bona fide purchaser for a valuable consideration, without notice, such bona fide purchaser is protected by the statute concerning mortgages. (1 *R. L.* 372, *sess.* 36, *ch.* 33. *Jackson* v. *Campbell,* 19 *John. Rep.* 281.) And by the act concerning deeds, (1 *R. L.* 369,) the deed first recorded takes preference. (*Berry* v. *Mutual Ins. Co.,* 2 *John. Ch. Rep.* 603.) Equity does not lend its aid against a purchaser for a valuable consideration. (*Frost* v. *Beekman,* 1 *John. Ch. Rep.* 288.) Catharine Tillinghast being seised, and holding the lands in trust for herself and children, had no right to mortgage the trust estate to raise funds for her private individual benefit, without the knowledge and approbation of the cestui que trusts. In this view of the case, Charles Tillinghast would be entitled to relief, as against the mortgage. The consideration expressed in his deed was his share and proportion of his father's estate; and the bare fact that he omitted to execute a final release to his mother for the same, cannot be urged as a ground why he should not stand in the situation of a bona fide purchaser. The representatives of Mrs. Hughes have no right to inquire into the fact whether or not a release was executed by Charles to his mother. It was not absolutely necessary, as between Charles and his mother. Charles does state, in his answer, that he accepted a deed of certain lands, in satisfaction of his share of the estate. The defendants, Martha Tillinghast, Mary Tillinghast, Isaac Q. Leake and Catharine his wife, although they are subsequent grantees in a deed which included part of the mortgaged premises, were unnecessarily made parties

to the bill, for the foreclosure of the mortgage, inasmuch as they have never directly or indirectly set up a title or claim hostile to, or in opposition to the complainant. And they were unnecessarily required to answer the complainants' bill. The complainants should therefore be decreed to pay them the extra costs, to which they have been improperly subjected. (*Bank of Plattsburgh* v. *Platt*, 1 *Paige's Ch. Rep.* 464. *Id.* 557.)

THE CHANCELLOR. From the answers in this case, it must be taken as true, that when Mrs. Tillinghast conveyed to her son, she concealed from him the fact that she had given a previous mortgage on the premises, which was then an existing lien thereon. If she knew the mortgage was not recorded, the fraud was probably intended to be committed upon Mrs. Hughes. But if she supposed it was recorded, it was a fraud upon her son to convey to him property which she had already mortgaged to another, without disclosing to him that fact. The legal title to the land was in Catharine Tillinghast at the time of the execution of the mortgage; and there is no pretence that Mrs. Hughes had any information as to the manner in which she had paid for the land, at the time the loan was made and the mortgage given to secure the same. If this had been otherwise, I am inclined to think there might have been a prior equity in favor of the defendant, Charles Tillinghast, to the extent of his share of the assets of the estate of his father which were applied to the payment of the first instalment of the purchase money of this particular portion of the Seneca lands. This, however, would be but a very small portion of the value of the premises; as the mother was the owner of one third of the assets in her own right, and the brothers and sisters of Charles were entitled to share with him in the residue. The complainants' mortgage is a valid lien upon that part of the premises conveyed to Charles Tillinghast, unless, upon the facts disclosed, he is to be considered a bona fide purchaser without notice, within the meaning of the recording act.

The object of the registry and recording acts was to protect those who should part with their money, property, securities,

or other valuable rights, upon the faith of a conveyance or mortgage of real estate, supposing that they were getting a good title thereto, or a legal and specific lien thereon ; and without notice, or having any reason to believe, that there was any previous mortgage or conveyance which could defeat such title or lien. The English registry acts made the unregistered deed or encumbrance at law wholly inoperative and void, as against a subsequent grantee or encumbrancer. But the court of chancery, in accordance with the manifest spirit and intention of the statute, at an early day adopted the principle of considering the prior deed or encumbrance as an equitable title or lien. It therefore applied to such cases the equitable principles which had previously been adopted, by that court, in relation to other contests between the holder of an equitable title, or lien, and a subsequent grantee or mortgagee of the legal title. In accordance with those principles, if the subsequent purchaser, or mortgagee, was a bona fide purchaser ; that is, if he had actually parted with his property on the credit of the estate, so as to give him an equitable claim or specific lien thereon, without notice of the prior equity, and had also clothed that equitable lien with the legal title, by taking a deed or mortgage, the court would not divest him of that legal title, or lien, in favor of the prior equity. But if he had notice of the prior equity, at any time before he had parted with his property on the credit of the estate, and before he had united the subsequent equity with the legal title, he was not considered as entitled to protection, against the prior equity, as a bona fide purchaser. The words bona fide purchaser, therefore, when introduced into our recording and registry acts, were intended to be used in conformity with this established meaning thereof; and they must, in the present case, receive the same construction which they had previously received, in the court of chancery, in reference to that principle of equity. If a person has an equitable title to, or an equitable lien upon real estate, a subsequent purchaser who obtains a conveyance of the legal estate, with notice of that equity, cannot in conscience retain such legal title ; as he has no equity united with it. So if he merely takes the legal estate in payment of, or as security for a previous debt, without

giving up any security, or divesting himself of any right, or placing himself in a worse situation than he would have been if he had received notice of the prior equitable title, or lien, previous to his purchase, this court will not permit him to retain the legal title he has thus obtained, to the injury of another. These principles are so familiar to every chancery lawyer, that it is not necessary to refer to the numerous decisions and elementary treatises in which they are to be found. The case of *Coddington* v. *Bay*, in the court of errors in this state, (20 *John. Rep.* 637,) is a leading case upon the question as to what is necessary to constitute a bona fide purchaser of a negotiable security for a valuable consideration, without notice of a prior equity ; and is analogous to the case now under consideration. It was there held that the receiving of a negotiable note in payment of, or security for a pre-existing debt, without any new consideration, or other change of rights on the part of the persons receiving it, did not constitute them bona fide purchasers for a valuable consideration ; although they supposed that the person from whom they received the note had a perfect right to dispose of it in that manner.

In this case Charles Tillinghast took the conveyance of the property under a belief that his mother had a right to dispose of it in that manner, and without any suspicion that she was either committing a fraud upon him or upon any other person. But he only received it towards a pre-existing claim that he had against his mother, for a share of his father's estate which she had appropriated to her own use ; and it is not alleged that he parted with any security, relinquished any right, or made any valuable improvement on the property, upon the faith of the title thus conveyed, and before he had notice of Mrs. Hughes' mortgage. I must therefore declare that this mortgage is a valid and subsisting lien upon the lands conveyed to him. It must be referred to a master to compute the principal and interest due. And upon the coming in of the report, the master must proceed and sell the mortgaged premises, or so much thereof as is necessary to pay the amount reported due, with interest and costs. The decree, however, must direct that part of the mortgaged premises, if any there

is, which belongs to Catharine Tillinghast, to be sold first, and then such parts of the premises as have been conveyed by her subject to the mortgage, in the inverse order of alienation ; so that the lands conveyed to her son Charles shall not be sold, if there is sufficient raised to pay the complainants without resorting to his part of the mortgaged premises.

1833.

Dickerson
v.
Tillinghast.

The master who sells the property is also to ascertain whether any part of the premises are encumbered by a mortgage to the state; and if so, to ascertain the amount due ; and either to sell that part subject to such mortgage, or to pay the amount, thus ascertained to be due, out of the proceeds of the sale of that part of the premises, as he shall deem most advantageous to the parties in this suit. The master who makes the sale is also to be authorized to cause such surveys to be made as he may deem necessary, and to compel the production of such deeds and papers as he may think proper for the purpose of ascertaining the separate interest of the defendants, and their several rights, by priority or otherwise. Upon the coming in of the master's report of sale, the defendant Charles Tillinghast is to be at liberty to apply to the court for such decree as he may be entitled to against his mother, or any other of the defendants in this cause, either upon the covenant in her deed, or for the costs of his defence in this suit, or for contribution, or otherwise.