### ELISHA GLIDDEN *versus* JOHN HUNT.

Where a mortgagee of land, who took with notice of a prior unregistered deed of the same land, assigned the mortgage to one who had no such notice, as security as well for a preëxisting debt as for a sum of money advanced at the time of the assignment, the debt and sum advanced being together less than the amount of the mortgage, it was *held*, that the mortgage was valid in the hands of the assignee, as against the first grantee of the land, to the amount of the assignee's whole demand against the mortgagee.

In pursuance of an agreement between the mortgagee and a person who had notice of the prior unregistered deed, such person paid to the assignee the amount of his demand, and to the mortgagee the balance of the amount of the mortgage, and the assignee assigned to him the mortgage. It was *held*, that the first grantee of the land was entitled to redeem upon paying the amount which the second assignee paid to the first assignee, with interest.

GLIDDEN heretofore filed his original bill in equity against Hunt, to redeem three parcels of land under mortgage, and a decree was pronounced at October term 1833, that he be permitted to redeem.

At the same term Hunt filed his cross bill ; and the original bill was continued, upon a motion to amend the decree to conform to the judgment of the Court upon the cross bill and answer.

The cross bill alleges, that on the 4th of May, 1822, Micah Balcom was sole seised of six parcels of land described, and that Micah and Joseph Balcom were seised as tenants in common of two other parcels described ; that on that day, by his deed of that date, Micah conveyed all the premises to Joseph, in fee, and Joseph openly entered into possession thereof, and openly held the same premises, and became seised and possessed thereof, and continued to hold the same until the sale of the right in equity mentioned below; that on the 12th of February, 1824, Micah and Joseph, by their deed of that

---

date duly recorded, mortgaged the several parcels to the Massachusetts Hospital Life Insurance Company, to secure the payment of $ 800 in one year ; that on the 8th of March, 1828, the insurance company assigned their mortgage to Rufus Brewer, and on the 2d of November, 1829, Brewer assigned the same to Hunt ; that on the 1st of July, 1826, the right in equity to redeem the mortgaged premises was attached on a writ sued out by Henry Brewer against Micah and Joseph, and on the 9th of November following was sold on Henry Brewer's execution and was purchased by him for $ 378·97, and on the same day was conveyed by him to Hunt, who is in possession thereof and ought now quietly to hold and enjoy the same ; but Hunt avers, that Glidden has filed his bill of complaint against Hunt to redeem three of the six parcels of land first described, pretending that Micah was sole seised in·fee of these three parcels, when Micah and Joseph mortgaged the same to the insurance company, and that on the 25th of July, 1825, Micah mortgaged the same to Jonas Balcom, to secure the payment of $ 500 ; and that on the 15th of August, 1826, Jonas assigned his mortgage to Joel Adams, and that Adams, on the 15th of June, 1828, assigned the same mortgage to Glidden ; whereas Hunt charges, that at the time of the conveyance to the insurance company, Micah had no title nor interest in or to the premises described, but that Micah joined with Joseph in the deed to that company, because the deed of Micah to Joseph was not then recorded, of which fact Glidden was well knowing ; that Jonas, at the time of the making of Micah's deed to Joseph, and at all times thereafter, well knew of the same deed and that Joseph was in open possession of the premises, claiming and having title to the same ; and that at the time of the assignment of the mortgage by Jonas to Adams, Joseph was in the open possession and occupation of the premises, claiming to hold the same by and under the deed from Micah to Joseph of May 4th, 1822 ; and that Adams had some knowledge, or some reason to know or suspect or believe, that the conveyance from Micah to Joseph had been made, and that the attachment of the right in equity, as above mentioned, had been made ; that the assignment by Jonas to Adams was made only as collateral security for the

payment of a debt due from Jonas to Adams, of about $ 150, and that at the time of that assignment Adams agreed in writing to reassign the mortgage to Jonas on being paid the sum then due to him ; that Glidden, at the time of the assignment to him by Adams, well knew, or had good reason to know or believe that the deed of Micah to Joseph was made as above mentioned, and that Joseph was in the possession of the premises, claiming and having title thereto ; and that Glidden knew, or had reason to know of the attachment and sale of the right in equity, as above mentioned, and of the agreement entered into by Jonas and Adams, and that the assignment to Adams was only as collateral security, and that the deed of Micah to Jonas was fraudulent and void ; and that Glidden paid to Adams nothing, or a very small sum, as a consideration for the assignment made to Glidden.

The cross bill prays that the deeds to Jonas, Adams and Glidden, may be delivered up to be cancelled, or if the deed of mortgage assigned to Glidden is valid, that he may release and convey to Hunt all his interest in the premises described in that deed, on being paid such sum as he paid to Adams as a consideration for the assignment.

Glidden, in his answer, admits that on the 4th of May, 1822, Micah Balcom was sole seised of the three parcels of land now in question ; he denies that the deed of that date, from Micah to Joseph, was ever delivered, but he believes that Joseph, subsequently to the 1st of September, 1826, surreptitiously took the deed from the possession of Micah and procured it to be recorded ; he admits that the mortgage to the insurance company had been assigned to Hunt, and that the equity of redemption had been attached and sold on execution and assigned to Hunt, and that at the time of the assignment made to him by Adams, he knew of the attachment and the proceeding under it ; he says that Micah, on the 25th of September, 1825, delivered to Jonas a deed of mortgage of the three parcels of land, to secure the payment of $ 500, which deed of mortgage was duly recorded ; that on the 15th of August, 1826, in consideration that Adams had previously expended a certain sum of money for Jonas and at his request, and then lent him a further sum and promised to lend him

other sums, Jonas assigned to Adams the mortgage last mentioned, as security, and Adams then gave Jonas his written agreement, purporting that the assignment had been made as security ; that Adams, relying on the mortgage so held by him, advanced to Jonas further sums, after the assignment ; that prior to the 15th of June, 1828, Jonas requested the respondent to pay Adams the sums due to him, and also to pay to certain other creditors of Jonas and to Jonas, certain other sums, and in consideration thereof Jonas offered to procure an assignment by Adams to the respondent, of the mortgage ; that on the 15th of June, 1828, Adams, at the request of Jonas, assigned the mortgage to the respondent, and the re spondent then paid Adams the several sums advanced by him to and for Jonas, amounting to $220, and soon after paid to Jonas and to certain other creditors of Jonas, divers sums, amounting to $280, making the whole consideration paid by the respondent the sum of $500 ; and in answer to an interrogatory, he says that he made inquiry of one Josiah H. Adams concerning the premises, whether before taking the assignment or very soon after he cannot recollect, and J. H. Adams assured him that the mortgage to Jonas was valid, that he (Adams) wrote it, procured it to be recorded, and, at the request of Jonas, examined the records, and that he (Adams) had heard of a deed made by Micah to Joseph which never passed by delivery, as he believed.

*Oct. 13th, 1835.*

The case was heard before the whole Court at October term 1835, and was argued by *B. Rand* and *J. Keyes,* on the part of Hunt, and by *Hoar,* on the part of Glidden.

*Oct. 20th, 1836.*

WILDE J. delivered the opinion of the Court. This case came on to be heard before me at a former term, on the original bill, and on opening the case it was agreed by the parties that my decision thereon should be final. After hearing counsel and considering the evidence, I was of opinion that the plaintiff was entitled to redeem, but under the circumstances of the case it seemed to me reasonable to suspend the final decree, and to allow the defendant to file a cross bill, which was accordingly done. The defendant then moved to amend the minutes of the decree, and that the cause should be continued until a hearing should be had on the cross bill. This

motion was allowed. The case has been since heard before the whole Court on the cross bill; and we are all of opinion, that the decision upon the former hearing, as the case was then made out, was correct.

The plaintiff claimed to redeem a mortgage made by Micah Balcom and Joseph Balcom to the Massachusetts Hospital Life Insurance Company in February, 1824. His title was derived from a mortgage deed from Micah Balcom to one Jonas Balcom, made July 25th, 1825, which was assigned by Jonas Balcom to one Joel Adams, and by Adams to the plaintiff. It was admitted, that prior to 1822, Micah Balcom was seised of the lands thus mortgaged, but the defendant produced a deed from him to Joseph Balcom, dated the 4th of May, 1822, but which was not recorded until December 1827, and subsequently to the record of the mortgage to Jonas Balcom. It was denied that this deed was ever consummated by delivery, and on this point the evidence was conflicting. There was evidence also tending to show that Jonas Balcom had knowledge of the deed of 1822, prior to his mortgage from Micah Balcom; and that the plaintiff had notice thereof prior to the time when he took an assignment from Adams. But there was no evidence that Adams had any knowledge or notice of the prior deed to Joseph Balcom. I was therefore of opinion, that Joel Adams had a valid title, and that the plaintiff had a right under him, which could not be defeated, however the other points might be determined.

It is a well established principle, that a deed fraudulent in its creation may become valid by matter *ex post facto*; as where a deed is made to defraud creditors, and the fraudulent grantee conveys to a *bonâ fide* purchaser for a valuable consideration and without notice of the fraud, such purchaser shall hold against the claims of the creditors of the first grantor. Bac. Abr. *Fraud, C*; 1 Sid. 134.

So if A., for a valuable consideration conveys land to B., and before B's deed is registered, A fraudulently conveys the same land to C., who knows of the prior conveyance, and immediately puts his deed on record before B., and then conveys to D., who is ignorant of the fraud, the title of D. would be valid. This was decided in *Trull* v. *Bigelow*, 16 Mass R.

406. And in the same case it was decided, that if D. con veys to E., who has knowledge of the fraud, E's title would be good ; for it is said, "although he knew that the title was once defective in one of the persons under whom he claimed, yet he also knew that the defect was cured, and the stain upon the title effaced."

This case is directly in point, in every particular, and fully maintains the former decision.

It now, however, has become necessary to decide the other points. And the first question is, whether the deed from Micah Balcom to Joseph Balcom was ever delivered. [The judge here went into an examination of the evidence ; which, in the opinion of the Court, established the fact of the delivery of the deed.]

The next question is, whether Jonas Balcom had notice of the prior deed to Joseph when he took his mortgage, and whether Glidden, the plaintiff, had the like notice when he took the assignment from Adams. And we are of opinion, that the evidence is sufficient to show, that both Jonas Balcom and Glidden had such notice. At least, they had notice sufficient to put them on inquiry, and that is equivalent to express notice or positive knowledge. For if they had reason to believe the fact, it was their duty to make inquiry, and if they neglected so to do, a third party is not to suffer by their neglect.

The only remaining question is, on what terms Hunt, on his cross bill, is entitled to redeem the original plaintiff's mortgage ; whether he is bound to pay the whole amount of the mortgage, or only what was due to Adams at the time of his assignment to Glidden, or only a part of that debt.

As to this question, it is very clear from the remarks already made, and the well established principles of equity, that Glidden can claim no more than Adams could have claimed had no assignment been made by him, and he were a party. It is objected, that Adams could only hold for the amount he advanced on the assignment of the mortgage, and not as a security for a preëxisting debt. It is true that it has been decided, that where an assignment is made merely to secure a preëxisting debt against the assignor, without giving up any

security against him, or paying any additional consideration, or incurring any new responsibility, the assignee must hold the property assigned subject to all the equity to which the assignor was subject. *   We give no opinion, however, as to this general principle, because, admitting it to be well founded, it will not govern this case ; for Adams did advance money, $ 25, on taking the assignment, and afterwards the further sums of $75 and $49·24, on the credit of the assigned mortgage.   These advances and payments were made by Adams in good faith, and it must be presumed that they were made for the purpose of securing his prior debt ; and we know of no principle of law or equity by which this intention can be defeated.   We are of opinion, therefore, that Hunt is entitled to redeem on payment of the sum of $ 220, the sum paid to Adams, with interest and costs.

――――――――――

* On this point the counsel for Hunt cited *Bay* v. *Coddington*, 5 Johns. Ch. R. 54 ; *S. C.* 20 Johns. R. 637 ; *Dickerson* v. *Tillinghast*, 4 Paige, 215.   And see *Flint* v. *Clark*, 22 Pick. 243.