CatoN, Justice, delivered the opinion of the court: (1) Jef-fries, having an equitable title to three lots of ground in the town of Quincy, on the 26th of April, 1831, executed two mortgages on them ; one to Mason, for $750, payable in one year, a.nd one to the' complainants for $1295.66, payable in three equal installments, of three, six, and nine months. This last mortgage recited and was subject to the former. Neither of these mortgages was paid, and on the 7th of March, 1833, Jeffries and Mason went to the county commissioners of Adams county, whose bonds for a deed of these premises Jeffries held, and delivered up these bonds, and procured a deed of the premises direct to Mason. At the same time Mason gave to Jeffries, for the alleged consideration of $1000, a power of attorney to sell one of the lots, for his own benefit. Jeffries sold this lot, in 1833, for $600, to Tilson, and on the 1st of May; 1834, Mason sold the balance of the premises for $1500. Afterwards a decree was obtained against a part of the premises for $192.17, on a mechanic’s lien, under which they were sold and bid in with money belonging to the estate of Mason. This lien was an encumbrance on the premises at the time the mortgages were executed. The first enquiry is to’ascertain how far Mason, when he acquired the title, took it subject to the claim of the complainants. The complainants’ mortgage was duly acknowledged and properly recorded on the 20th of May, 1831. We have already decided in the case of Doyle et al. v. Teas et al. (Ante 202), that under the recording act, the registry of an equitable title to land operates as constructive notice to the same extent as the recording the legal title, to those who deal [*390] with the person creating that equitable title or interest, or others claiming under him ; and as Mason made the purchase of Jeffries, although he received the title from the county commissioners, he was chargeable with notice of all in-cumbrances made by Jeffries on the premises, which were duly recorded, and consequently took the legal title subject thereto, after satisfying his own prior lieii. But it was urged, that having a mortgage upon the whole premises, by acquiring the legal title, his mortgage was merged in that title, which thereby became complete. Pro tanto this is true. By acquiring the legal title, his mortgage ceased, by being absorbed in the higher title, which was united with it in the same person But not so the other encumbrance, over which he had no control. To do this he should have proceeded to obtain satisfaction of his mortgage by legal proceedings, so that subsequent encumbrances could have had an opportunity to redeem, and thus obtain the benefit of the full value of the premises, to secure the payment of these debts. Had he, under such proceedings, acquired the legal-title, the complainants’ lien might have been cut off. But even without this constructive notice, I think it is clear that Mason was not a bona fide purchaser. It is not pretended that he paid any new consideration for this purchase. In order to constitute a bona fide purchaser, he must part with something valuable at the time, or in some way place himself in a worse condition than he was before. It is not sufficient if he took the property in consideration of a precedent debt. So also if he purchase an estate on a credit, and secure the purchase money, and at any time before he actually pay the money, lias notice of the prior equity or lien, -he is .not a bona fide purchaser. 4 Paige 221-2 ; 20 Johns. 637. Upon no principle of law, then, could Mason claim to hold the legal title, discharged from the complainants’ encumbrance. He took it aware of the existence of this mortgage, and in payment of a precedent debt of a little more than one third its value, which was already well secured on the premises. To hold that the legal title passed, discharged from this encumbrance, would, in my judgment, be countenancing and giving effect, to say the least, to a legal fraud. In Dickinson v. Tillinghast, above referred to, the chancellor says: “ If a person has an equitable title to, or an equitable lien upon, real estate, a subsequent purchaser, who obtains a conveyance of the legal estate, with notice of that equity, cannot in conscience retain such legal title, as he has no equity united with it.” Although it might be sufficient to stop here for the purpose of charging the legal title, in the hands of Mason, with this mortgage, yet the circumstances of the case carry us still farther. In March, 1833, we find these premises encumbered with $2380, when they were worth $2000. The amount of Mason’s encumbrance was then $788.60, and without any other consideration, we see the legal estate conveyed, by Jeffries’ direction, directly [* 391] to him, without passing through the hands of Jeffries at all, and at the same time, he gives to Jeffries a power of attorney to sell a part of the premises, for his own benefit, for the pretended consideration of $1000, when, in fact, as we learn from the masters’ report, no consideration passed either way. Mason sold the part that he retained for $1500, thus realizing some $700 for assisting Jeffries to practice a manifest fraud on the complainant. It is the duty of the court to see that this fraud shall not be allowed to prevail. Mason by acquiring the legal title, in fraud of the owner of theprior equity was bound to hold it in trust for his benefit, (2 Mun. 196 ; 1 Gill & Johns.' 271.) and, as such trustee, must account for its value or proceeds, after deducting the amount of the prior encumbrances. It is a matter of no importance to en-quire whether Mason ever received the $600, for which Jeffries sold one of the lots, for he is equally responsible, whether he allowed Jeffries to retain the money in fraud of his cestui que trust, or received and used it himself. He is responsible for the loss, and must reimburse it. Although he may have made himself trustee by an act of fraud, the court will compel him to act with fidelity and circumspection, by holding him responsible for any loss for not doing so. Saund. on Uses and Trusts 246 ; 1 Comyn’s Dig. 496, §§ 39, 41; 1 Har & Gill 11, 25. The question is not what the trustee has made, unless the cestui que trust chooses so to consider it, but what the latter has lost. If the trust estate is disposed of to advantage, he must account for the proceeds; if he squander it, he is responsible for its value. In this case the property was sold for about its fair value, as appears by the masters’ report; and for the amount of these sales the complainant is entitled to an account, after deducting the amount of' Mason’s mortgage, and of the lien which was discharged from his estate; consequently the decree of the court below will have to be reversed, and a decree will be. entered here upon the following principles: Interest will be reckoned on $788.60, the amount of Mason's mortgage, on the 3d of March, 1883, from that date till the 23d of May, 1834, the time that he sold the premises. To that will be added $192.17, the amount of the mechanic’s lien, which will be deducted from $2100, the amount for which the premises sold, and on the balance interest will be reckoned up to this time, for which a decree will be entered in favor of the complainants, against the estate of Mason, and a decree will be, entered against Jeffries for the amount due on the complainants’ mortgage. Any money paid by, or collected under, either of said decrees, shall apply in satisfaction of both, to the amount of such payment or collection. As this suit was not commenced till after the death of Mason, and as he was not called on for an account, during his life time, I think it right that his estate should not be charged with [* 392] the costs of this suit, all of which will be decreed against Jeffries. As the complainants are satisfied to take a decree against the estate, of Mason, I have not thought it necessary to enquire whether the land is chargeable in the hands of the grantees of Mason, who are made defendants. Decree reversed. Wilson, Chief Justice, and Lockwood, Justice, did not sit in this cause.