## Agricultural Bank *v.* Samuel Dorsey *et al.*

Although it is the policy of a court of equity to distribute the assets of a debtor equally among his creditors, yet if one of them has obtained a legal preference, that preference must be preserved.

Although a conveyance may be voidable for fraud as against creditors, yet if by agreement between a creditor and the fraudulent grantee a portion of the property so conveyed is applied to pay the debt of such creditor, the conveyance will be held good to that extent, because the property would then have received the same direction and application which the law would give to it upon declaring the deed void.

A conveyance which is voidable only, as being contrary to the statute against fraudulent conveyances, may be confirmed by matter *ex post facto.*

A *bona fide* purchaser from a fraudulent grantee for valuable consideration, and without notice of the fraud, is protected against the general creditors of the grantor.

A purchaser who takes a conveyance in payment of a pre-existing debt from the grantee, is not entitled to protection against the prior creditors of the grantor, the latter having the stronger equity.

This was a motion by a part of the defendants to dissolve the injunction previously granted, on the bill answers and exhibits filed in the case, all of which are sufficiently referred to in the opinion of the chancellor.

H. P. ELLETT for the motion.

The case is submitted on motion, by Wright, Blakey & Co. and Catlett Rhodes, to dissolve the injunction restraining them from enforcing decrees of foreclosure obtained in Claiborne circuit court.

The deed of Samuel Dorsey to E. H. Dorsey, and the mortgage by E. H. Dorsey to Samuel, dated November 13, 1839, are charged by the bill to be fraudulent and void, and are prayed to be set aside. The answer of the Dorseys admits that the deed and mortgage were made for the purpose of excluding the creditors of said Samuel Dorsey, and of making a provision for himself and children. The sale, therefore, as against creditors, is wholly void, and the mortgage cannot even be set up in favor of

the creditors attempted to be preferred by it. 2 Kent Com. 532 to 536, and cases cited, particularly Mackee *v.* Carns; 5 Cowen 547.

The answers of Wright, Blakey & Co. and Rhodes, deny all knowledge or notice of any fraud in the sale by S. Dorsey, and claim that by virtue of their several mortgages they are *bona fide* purchasers for valuable consideration. They deny any knowledge of the existence of the mortgage of November 13, 1839, until long after the execution of their mortgages of February 12, 1840.

The record of the deed and mortgage could give them no notice of any fraud, for these instruments are perfectly good on their face, and are only void by reason of extrinsic facts; and that, too, only as to creditors seeking to set them aside.

While, therefore, the deed and mortgage of November 13, 1839, are fraudulent and void, and cannot be enforced themselves, still the parties making this motion are protected under their subsequent mortgages, unless notice of the fraud is brought home to them, provided they are *bona fide* purchasers for valuable consideration.

That a mortgagee is a *bona fide* purchaser, see 4 John. Ch. R. 417, 433; 4 Kent, 168, note. A person taking a conveyance in payment of a pre-existing debt, is not a *bona fide* purchaser. He must have advanced a new consideration, or given up some security. 4 Paige C. R. 215. These defendants are precisely within this case on both alternatives. They advanced a new consideration by dismissing their pending suits, and giving time, and they gave up some security by releasing the indorsers, W. C. Dorsey and George Read.

Every allegation of collusion and fraud against these defendants is most explicitly denied, and they stand in the attitude of creditors exercising an unceasing vigilance to secure their debts.

In regard to the release or satisfaction entered by Samuel Dorsey on the record of the mortgage of November 13, 1839, the answers are full. They deny any knowledge of the matter whatever, and then specifically deny that it was done in pursuance of any agreement with them. If it was a legal fraud between Dorsey and Baldwin, which is denied, it cannot affect these parties,

for they can only be bound by the legal acts of their attorneys. But how can it be fraudulent for Dorsey to enter satisfaction of a mortgage which is alleged by complainant and fully proved to be fraudulent and void?

The allegations of the answers in relation to the consideration and circumstances upon which the mortgages of February 12, 1840, were given, are sustained by the affidavit of defendants' solicitor, filed herewith.

· R. M. GAINES contra.

I refer the court to the abstract of the answers of the defendants' counsel, which I have examined and believe to be correct in substance. The answers of Sam'l & E. H. Dorsey and Baldwin substantially admit all the allegations of fraud in the bill; and, what is especially pertinent to this motion, they admit that the confessions of the bills filed by Blakey, Wright & Co. and the indorsement of satisfaction by Samuel Dorsey on the mortgage of E. H. Dorsey to him, were in pursuance of an agreement, the object of which was to give to them (Wright, Blakey & Co.) a priority over the bank. The answers of Wright, Blakey & Co. and Rhodes, deny that they knew any thing of this until afterwards, and they deny any fraud in themselves; but they do not deny that their agent and attorney, who transacted the business, was guilty in the premises—and they could not deny it. These answers would have been excepted to as insufficient if I had had an opportunity to examine them before this motion was made, on the ground that they do not answer the second specific interrogatory of the bill in reference to this matter, and the question is evaded in their general answer, in which they only deny that *they themselves* had any such object as that indicated in the interrogatory. They do not deny that such an agreement and understanding existed, which is admitted by the real parties to it, and by which they are bound, one of these parties being their attorney with full powers.

That the answers of Wright & Co. and Rhodes are insufficient in this particular, I refer the chancellor to the case of Wharton *v.* Wharton, 1 Sim. & Stew. 235. Other authorities might be cited, but is not deemed necessary.

· The deed from Samuel to E. H. Dorsey, and mortgage from the

latter to the former, are palpably fraudulent, both in law and in fact, and so admitted to be. But Wright, Blakey & Co. and Rhodes claim to be purchasers without notice. This pretension cannot be sustained. They admit that they were told by Samuel Dorsey that he had sold his property to E. H. Dorsey. This was enough to direct them to the records, if they had not been bound to look there before, and there they would have seen enough to satisfy reasonable men that they were relying on a broken reed when they took a mortgage from E. H. Dorsey, whose title being admitted to be fraudulent, any conveyance by him must of course fall with it.

" In all cases where a purchaser cannot make out a title but by a deed which leads him to another fact, whether by description of parties or otherwise, he will be deemed cognizant thereof; for it was *crassa negligentia* that he sought not after it;—and, for the same reason, if a purchaser has notice of a deed, he is bound by all its contents." See 2 Sugden on Vendors, edition of 1836, top of page 340.

If the transaction between Samuel and E. H. Dorsey was fraudulent and void, (which is admitted,) what interest had E. H. Dorsey to convey to Rhodes and Blakey? It is only by showing a valid title in E. H. Dorsey that they can sustain their position. Admitting that a mortgagee may be considered a purchaser, he can certainly stand in no better position than his vendor; and in this case Wright, Blakey & Co. and Rhodes stand in the shoes of E. H. Dorsey. Could he say that he was a purchaser without notice?

The CHANCELLOR,

The facts of this case, so far as they are connected with the consideration of the motion to dissolve the injunction, are these: On the 13th of November, 1839, Samuel Dorsey conveyed all his estate, both real and personal, to his son, Edward Dorsey, who, on the same day, reconveyed the same property to the father, by way of mortgage, in consideration of an alleged indebtedness to him to the amount of forty-six thousand dollars, twenty-six thousand of which were to be paid to different creditors of the father, and the remainder to be paid to his other different children. There are

29*

in the mortgage different and various stipulations and reservations in favor of the father, as to the property conveyed. A full satisfaction of this mortgage was afterwards entered upon the record by the father, Samuel Dorsey. On the 18th of February, 1840, Samuel Dorsey, being indebted to Blakey, Wright & Co. and to C. Rhodes, for which debts E. Dorsey, the son, was liable as indorser, the said E. Dorsey, to secure said claims, executed a mortgage on a part of the property so conveyed to him by his father; upon which said latter mortgage the said Blakey, Wright & Co. and the said C. Rhodes, filed their bills and obtained a decree for foreclosure, by confession, at the May term, 1841, of the circuit court for Claiborne county. On the 26th of November, 1840, the complainants obtained judgments against Samuel Dorsey, the father, for about ten thousand dollars, upon which this bill was filed, enjoining the enforcement of the decrees of foreclosure in favor of the defendants, Blakey, Wright & Co. and C. Rhodes, and insisting that the deed of S. Dorsey to E. Dorsey is fraudulent and void as against creditors, and that the property mortgaged to B. W. & Co. is first liable to said judgments.

It is not necessary, in deciding the present motion, that I should at all anticipate the general merits of the case. The simple question now is, whether the complainant shows any priority over the claims of Blakey, Wright & Co. and C. Rhodes, against the property mortgaged to them, or any equity in favor of setting aside the decrees of foreclosure in their favor. The complainant and these defendants are all equally meritorious creditors of Samuel Dorsey, each seeking to enforce their claims against the property of a common debtor. The right, therefore, of either to an exclusive satisfaction must depend upon whether either one has obtained a legal priority over the other, giving him a preference against the property sought to be subjected; for, although it is the policy of a court of equity to distribute the assets of a debtor equally among his creditors, yet, if one of them has obtained a legal preference, that preference *must* be preserved. Taking the allegations of the bill as true, that the conveyance from Samuel Dorsey to Edward Dorsey was fraudulent and void as against creditors, I am still unable to perceive how that fact can prejudice the rights of these defendants—because the deed must be equally void as to

Agricultural Bank *v.* Samuel Dorsey *et al.*

- all creditors. It is true that the mortgages were made by Edward Dorsey, who held at least the legal title under the deed from the father; but the mortgages were made to secure debts for which both the father and son were legally and equally liable. The mortgagees were therefore the creditors of both the fraudulent grantor and grantee; and, although they derive title through the grantee, yet the consideration of the conveyance was a debt due them from the grantor, for which the grantee had become liable.

Although the original conveyance may be voidable for fraud, as against creditors, yet if by agreement between a creditor and the fraudulent grantee, a portion of the property is applied to pay the debt of such creditor; it seems to me that the conveyance should be held good to that extent, because the property would then have received the same direction and application which the law would give to it upon declaring the deed void. If the grantee does that which the law would compel him to do, I can see no reason for disturbing the act. A conveyance which is voidable only, as being contrary to the statute against fraudulent conveyances, may be confirmed by matter *ex post facto.* Murray *v.* Riggs, 15 John. Rep. 571. Verplank *v.* Sterry, 12 idem, 536. I think that the mortgages by E. Dorsey to these defendants, on account of the previous debts of the grantor, were such confirmation, and that the conveyance was thus, to the extent of the property mortgaged, rendered valid ande ffectual. But if the mortgagees are to be considered as deriving title exclusively under E. Dorsey, it is by no means clear that the general creditors of the grantor could disturb it.

It is now well settled that a *bona fide* purchaser, from a fraudulent grantee, for valuable consideration and without notice of the fraud, is protected against the general creditors of the grantor. Coleman *v.* Cocke, 6 Rand. 618; Bean *v.* Smith, 2 Mason Rep. 252; Anderson *v.* Roberts, 18 John. Rep. 516 ; 6 Cranch, 133. Whether a mortgagee from the fraudulent. grantee would receive the same protection, does not appear to have been decided by any case to which I have referred. It has been decided in England that a mortgagee is a purchaser within the meaning of the statute of the 27 Elizabeth, ch. 4. See 1 Powell on Mortgages, 210, 211, and authorities there cited. But a purchaser who takes a convey-

ance in payment of a pre-existing debt from the grantee, is not entitled to protection against the prior creditors of the grantor; for there the conveyance places him in no worse situation than he was before, and the creditors would have the stronger equity. The purchaser must have advanced a new consideration upon the faith of the estate conveyed, or have relinquished some security, for a debt previously due him. Dickerson *v.* Tillinghast, 4 Paige Ch. Rep. 215; Coddington *v.* Bay, 20 John. Rep. 637.

It seems to me that the same doctrine, under the same qualifications, should by analogy be extended to a mortgagee. Here, although the mortgage was made to secure a pre-existing debt, the mortgagee, in consideration of getting the mortgage, relinquished the security which he had, by giving up the old note, which was indorsed by third persons, and taking a new note from the mortgagor. I do not wish, however, to be understood as pronouncing any definite opinion upon this point. I place my decision upon the ground that the complainant and these defendants are all creditors of Samuel Dorsey, equally meritorious in their claims, and that the mortgage to the defendants must, under the circumstances, be regarded virtually as a mortgage from Samuel Dorsey himself, and as that mortgage is older in date than the judgment in favor of the complainant, it must be first satisfied, according to the maxim that between equal equities, *qui prior est in tempore potior est in jure.*

Let the motion to dissolve be sustained.