## THE ALFRED J. MURRAY.

THE ALFRED J. MURRAY v. AMERICAN TOWING & LIGHTERING CO. et al.

(Circuit Court of Appeals, Fourth Circuit. October 2, 1894.)

No. 85.

MARITIME LIENS—INNOCENT PURCHASER—TAKING VESSEL FOR DEBT.
  One who takes a barge in payment of a debt is not an innocent purchaser, so as to release him from claims against the vessel contracted by the vendor. 60 Fed. 926, affirmed.

Appeal from the District Court of the United States for the District of Maryland.

This was a libel by the American Towing & Lightering Company against the barge Alfred J. Murray, in which Edward Tunison and Richard Roser, material men, intervened, and claimed liens. There was a judgment for libelants and interveners, and Engle & Co., claimants of the barge, appeal. Affirmed.

Richard M. McSherry, for appellants.

Robert H. Smith, for the towing company.

Thomas C. Butler and D. E. Monroe, for interveners.

Before GOFF and SIMONTON, Circuit Judges, and HUGHES, District Judge.

SIMONTON, Circuit Judge. The barge Alfred J. Murray was engaged in trade between New York and Chesapeake bay. She had no means in herself of locomotion, and the American Towing & Lightering Company was under contract with one of her owners to do all necessary towage between Chesapeake City, in the state of Maryland, to a port or ports on Chesapeake bay, usually Piankatank, in Virginia. While this towage service was being performed, in 1892, to April, 1893, the barge was owned by J. A. and C. Griffin, and was covered by a mortgage to Alfred J. Murray in the sum of $6,000. The barge cost, about two years before 1893,

$11,000.   J. A. and C. Griffin were engaged in business, and for some cause became greatly embarrassed, in fact insolvent, in the early part of 1893.   They had had friendly relations with M. Engle & Co., and these two firms used between them accommodation notes. Engle & Co. would give the Griffins their note, to be used by the Griffins, but to be met at maturity by Engle & Co., and the Griffins would give Engle & Co. their note, to be used by the latter, but to be met by the former at maturity.   On 9th May, 1893, there were outstanding, running to maturity, one of these notes given by Engle & Co. to J. A. and C. Griffin in the sum of $2,560, and another of the same amount given by the Griffins to Engle & Co.   These were discounted by each firm with a banker.   On that day Engle & Co. purchased from the Griffins the barge A. J. Murray, on the terms $2,560 cash and $6,146.32 in notes, maturing at different dates. The sum paid as cash was really the money due on the accommodation note of J. A. and C. Griffin, given to and used by Engle & Co., and held by Eppinger & Russell; and the notes were given to J. A. Murray, the mortgagee of the barge, to whom a new mortgage, presumably upon the satisfaction of the old mortgage, was executed for $5,761.   At the date of this transaction the Griffins owned no other property than this barge, then under mortgage, and some logs and timber, and were wholly unable to meet the note given by them to Engle & Co. for their accommodation and, as we have seen, discounted by them.   When the barge, under the terms of sale, was about to be conveyed to Engle & Co., they made some inquiry at Perth Amboy, where her title deed was recorded, and perhaps at Chesapeake City, as to any outstanding claims against her, and were informed that none existed, except claims for supplies, amounting to about $100.   In fact she at that time owed the towage company a large bill for towage, and she also owed Tunison and Roser, two material men at Brunswick, N. J., for supplies.   Under the law of New Jersey, the state to which the barge belonged, material men have a lien on vessels for such supplies.   The American Towing & Lightering Company filed the libel in this cause for towage services from June 12, 1892, to December 21, 1892.   The material men intervened for open accounts, one beginning 18th July, 1892, and ending December 15, 1892; the other beginning April 9, 1892, and ending December 15, 1892.   Much testimony was taken in the case, and it was heard with the libel, interventions, and answers.   The district court entered a decree against the barge. The court was of the opinion that Engle & Co., the present owners, were not bona fide purchasers in such a sense as to release them from claims against the vessel contracted by the Griffins, under whom they held; and that, even if they were, there was not such laches on the part of the libelant and of the intervening material men as would deprive them of their lien.   In these conclusions we see no error.   Engle & Co. took the barge at a certain price.   They paid the purchase money by meeting a note of the Griffins, indorsed, it is true, for their accommodation, but held by a bona fide holder before maturity.   The Griffins were wholly unable to pay this note either to the holder, or to Engle & Co., if they met it.   The re-

mainder of the purchase money went to an existing mortgage on the barge. It is very clear that this transaction was fully expressed by Moses Engle himself, in his testimony, when asked, "But the note which they [J. A. and C. Griffin] passed to you was not paid, but you took the barge instead?" and he answered, "I took the barge in place of the note, considering that so much money." The consideration for the transfer of title in the barge was to secure protection from an antecedent liability incurred by the vendee for the vendor. These are not circumstances which make one a bona fide purchaser. A bona fide purchaser is one who at the time of the purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase be set aside. Alden v. Trubee, 44 Conn. 455.

The liability of Engle & Co. on the note of the Griffins, discounted by and held by Eppinger & Russell, was fixed. The Griffins were in insolvent circumstances. Engle & Co. were responsible for the note, and when they paid it they paid their own debt. They gave up no security. They divested themselves of no right. They placed themselves in no worse position than they were in before. In fact, incurring a liability and suffering a loss in their dealings with the Griffins, and having no lien, they acquired almost the only property the Griffins had, to secure themselves against loss. In Dickerson v. Tillinghast, 4 Paige, 215, Chancellor Walworth held that the transfer of an estate, upon which there was a prior unrecorded mortgage, in payment of a pre-existing debt, without the transferee giving up any security or divesting himself of any right or placing himself in a worse position than he was before, did not make the transferee, who had no notice of the mortgage, a purchaser for value, and so entitled to protection. In the notes to Vadikin v. Soper, 2 Hare & W. Lead. Cas. 233, this rule is stated. Whatever may be the rule in the case of negotiable instruments, it is well settled that the conveyance of lands and chattels as security for an antecedent debt will not operate as a purchase for value or defeat existing equities. To similar effect is Johnson v. Peck, 1 Woodb. & M. 334, Fed. Cas. No. 7,404.

Nor do we see any want of diligence in the enforcement of their liens on the part either of the libelant or of the interveners, such as to amount to waiver of or to work a forfeiture of their liens. On this point nothing can be added to the reasons set out in the opinion of the district court. The decree below is affirmed in all respects; the costs of this court to be paid by appellants.