Bevans v. Bolton.

———◦◦◦◦—◦——

JOSEPH J. BEVANS, Respondent, v. WILLIAM BOLTON et al., Appellants.

1. Under the 8th section of the Statute of Fraudulent Conveyances, where the mortgagor or grantor in a deed of trust of personal property retains possession, it is sufficient that the deed be recorded in the county in which the mortgagor or grantor resides.

2. The removal of the grantor or mortgagor with the personal property to another county will not affect the title of the mortgagee or trustee, nor their right to the possession for the purpose of paying the debts secured by the deed. And as against creditors, residents of the same county with the grantor, it is not necessary that the deed be again recorded in the county to which the mortgagor removes.

3. If the mortgage or deed of trust be not recorded, and the mortgagor retain possession of the personal property, the deed will be fraudulent as to the creditors of the mortgagor, although they have actual notice of the execution of such deed.

---

* But for error apparent on the face of the record, a court of error will reverse the judgment of an inferior court, although no exception be taken therein. (See West v. Molloy, 9 Mo. 167; McGee v. The State, 8 Mo. 495; Carr v. Edwards, 1 Mo. 137; Slocum v. Pomeroy, 9 Cranch, R. 321.)—REP.

*Appeal from St. Louis Court of Common Pleas.*

This was an action for the possession of personal property, brought against G. W. Manning, constable of St. Louis township, who, by virtue of executions issued by a justice of the peace in favor of the other defendants, and against James D. Kincaid, had levied upon a slave girl, named Fanny, as the property of said Kincaid. The plaintiff claimed title under a mortgage deed made by James D. Kincaid and William C. Kincaid, executed at Bowling Green, Pike county, August 4, 1858, by which lands in the counties of Pike and Audrain, together with personal property, including the slave Fanny, were conveyed to the plaintiff to secure the payment of an indebtedness to sundry persons. The grantors and grantee, at the date of the deed, resided in Pike county. The deed was recorded in Pike county, August 4, 1858; in Audrain county, August 26, 1858, and in St. Louis county, February 22, 1859.

About November 1, 1858, James D. Kincaid removed his family to St. Louis, and brought with him the girl Fanny. In December, 1858, Bolton & McCormick obtained judgments against James D. Kincaid, before Justice Waite of St. Louis county, upon which executions were issued and placed in the hands of defendant Manning, who, by order of the plaintiffs in the execution, levied upon the slave Fanny, on December, 28, 1858.

Upon the trial, the plaintiff offered in evidence the deed from James D. and William C. Kincaid to himself, which, after describing the property conveyed, and the debts intended to be secured, contained the following provisions:

" Now the object and intention of this deed is to secure the payment of the aforesaid notes, and to secure the aforesaid Bevans, Bennett, Roberts, *et al.*, against all loss and liability in case the said notes shall not be paid by us, and they or either of them shall be forced to pay any or either of said notes; and if the said J. D. or W. C. Kincaid, or either of them, or any person for them, shall pay the said notes or

drafts, then this deed shall be void, otherwise to be in full force, and the said Joseph J. Bevans is hereby authorized and empowered to superintend and see to the disposal of the said personal property heretofore specified, that the proceeds may go towards liquidating and satisfying the aforesaid notes."

The defendants objected to the admission of this deed in evidence, for the reason that it was fraudulent upon its face. The objection was overruled, the deed admitted, and defendants excepted.

Evidence was given as to the good faith of the parties and the fairness of the transaction. The debts secured by the deed were due and unpaid.

At request of the plaintiff, the court instructed the jury as follows :

If the jury believe from the evidence that the slave Fanny, described in the petition, is the same slave described in the deed from Kincaid to Bevans ; that said deed is a genuine deed, and was executed by said Kincaid for the purpose and consideration expressed in said deed ; that said Kincaid and Bevans, at the time of the execution of said deed, both resided in Pike county, Missouri, and continued to reside there until after said deed was recorded in said Pike county, and that said slave remained in said county during all of said time ; that said deed was recorded in said county on the 4th day of August, 1858 ; that said Kincaid remained in said Pike county until about the month of October, 1858, when he removed with his family to St. Louis, taking said slave with him, but with the intention of removing back with said slave to Pike county during the next year, and continued to reside in St. Louis until the commencement of this suit; and that the debts described in said deed, or any portion of them, were due and unpaid at the commencement of this suit ; and that defendants Bolton and McCormick, at the date of said deed, did, and ever since have resided in said Pike county, then the jury should find for the plaintiff.

Defendants asked the following instructions, which were refused :

1. Unless the jury believe from the evidence that the condition of the deed of trust has been broken, they must find for defendants; the plaintiff Bevans not having, unless the condition be broken, such a title as will support the suit.

2. If the jury believe from the evidence that the negro girl Fanny was never delivered by James D. Kincaid and William C. Kincaid to plaintiff; and that the said James D. Kincaid never parted with the possession of said girl until she was seized under the said executions by defendant Manning; and if the plaintiff has not shown by evidence sufficient to satisfy you that the said deed was made in good faith, and without any intent to defraud creditors or subsequent purchasers, then you must find for the defendants.

3. If the jury believe from the evidence that the possession of the negro girl Fanny was not delivered to plaintiff, and not retained by him after the execution of said deed; and you further believe that the possession of her was retained by said James D. Kincaid, and that he exercised acts of ownership over said slave in bringing her with his family from Pike county to St. Louis county, and retained her in his family as a servant, then you must find for the defendants, and it makes no difference whether the deed of trust was recorded or not.

4. If the jury believe from the evidence that the possession of the negro female slave, named Fanny, was never delivered to and retained by Joseph J. Bevans, plaintiff, under the deed of trust executed by James D. Kincaid and William C. Kincaid to him, and in evidence before you; and that the said James D. Kincaid resided in St. Louis county at the time the judgments were had, and executions on the same issued under Liberty Waite, and at the time said slave was levied upon as shown in the answer of defendants; and that said slave was found in the possession of said James D. Kincaid at the time of the levy; and if you believe from the evidence that said deed of trust was not recorded in St. Louis county until after the executions named in the answer were issued

by Liberty Waite, justice of the peace, then you must find for the defendants.

5. If the jury shall believe from the evidence that the negro girl Fanny, mentioned in the petition, was mortgaged in Pike county by the Kincaids to the plaintiff; that at said time both the said Kincaids and plaintiff were residing in said county, and said negro girl was in said county at said time and in the possession of James D. Kincaid; that said mortgage was duly recorded in said Pike county; that, subsequently, the said Kincaid by and with the consent of the plaintiff was permitted and did take said girl Fanny to this county to be used by him said Kincaid; and that at the time of the levy by the constable Manning, under the executions of Bolton and Bolton and McCormick, read in evidence, the said Kincaid was in St. Louis with said negro, and no mortgage for the same or other title paper in the plaintiff was on record in this county, then the said girl was subject to said executions, and the jury ought to find for defendants.

6. If the jury shall believe from the evidence that the mortgage deed read in evidence was given at a time that said Kincaid was largely indebted and insolvent; and that said Bevans, mentioned in said deed as the mortgagee, well knew the same; and that said deed was executed for the purpose and with the intent to defraud, hinder and delay the creditors of said Kincaid, then the said deed is fraudulent and void as against the creditors of said Kincaid at the time existing, and the jury ought to find for the defendants.

The verdict and judgment were for the plaintiff, and defendants appealed.

*Decker & Voorhis*, for appellants.

I. The deed offered in evidence is uncertain. It makes no provision for forfeiture in relation to the personal property or real estate. It does not provide for sale of the real estate. It was void upon its face, as a conveyance to the use of the

grantors. The possession was retained by the grantors. No time is limited for the payment of the debts secured.

II. Bevans had not reduced the slave to his possession before the levy of the execution, and therefore had no title that would enable him to maintain this action. (19 Ill. 594; 5 Duer, N. Y. 501 ; Hall v. Camley, 11 N. Y. 501.)

III. The retention of the possession by James D. Kincaid brings the deed within the 10th section of the Statute of Fraudulent Conveyances. (Rev. Stat. 1855, p. 805.)

IV. The residence of Kincaid was in St. Louis county at the date of the levy of the execution, and thus the deed was invalid under the 8th section of the statute.

*Grover*, for respondent.

BATES, Judge, delivered the opinion of the court.

This case was heretofore submitted to the court, and an opinion prepared, but no judgment entered. The parties now agree that the opinion shall be filed, and stand as the decision of the court.

Therefore, in accordance with that agreement, and the opinion of Judge Napton, in which Judge Ewing concurred, the judgment below is affirmed, the other judges concurring :

NAPTON, Judge.

The principal ground upon which the defence in this case rests, is the fact that the deed of trust executed to the plaintiff was not recorded in St. Louis county until a few days after the executions in favor of the defendants were placed in the hands of the officer. The grantor and grantee in the deed, and all the beneficiaries, as well as the defendants who sued out the execution upon their judgments in St. Louis, all resided in Pike county at the time of the execution of the deed, in August, 1858. It was recorded in that county the day it was executed, and in Audrain county, where a portion of the lands lay, a few days afterwards. In the latter part of October, Kincaid, the maker of the deed of rutst, removed

from Bowling Green to St. Louis, intending, it would seem, to return to Pike county the ensuing year, and take with him the negro girl sued for, with the consent of the grantee, the plaintiff in this case. The defendant, who lived also in Bowling Green, came down to St. Louis, sued Kincaid before a justice, obtained judgment, and levied on the slave.

Our statute requires a mortgage or deed of trust of personal property where the possession is retained by the grantor, to be recorded in the county in which the grantor resides. This was done in the present case, and the statute was, beyond doubt, literally complied with. Whether the removal of Kincaid, the grantor, to St. Louis with the property, would subject it to the execution of creditors there unless recorded in that county in time, is a question it is not necessary to determine. Certainly the bare removal of the grantor with his slave to St. Louis could not in any sense prejudice the creditors who lived in Pike county, where the deed was made and recorded. We mean, of course, a removal which was not attended with any circumstances calculated to excite a suspicion of fraud, and it was not pretended in this case that Kincaid's removal to St. Louis had the most remote reference to any design upon his creditors. The creditors in Pike county could certainly not be benefitted by recording the deed in St. Louis county; the statute does not in terms require the deed to be recorded anywhere else but in the county where the grantor resides. The deed is absolutely invalid against a creditor or purchaser if it is not recorded, although such creditor or purchaser may have actual knowledge of it. (Bryson v. Phœnix, 18 Mo. 13.) The statute is imperative in requiring the deed to be recorded, or the possession of the property conveyed to be transferred, and all questions of actual notice are purposely avoided. It is not positively required to record the deed a second time or at a second place; that may or may not be inferred. But when we fall upon a case where the object of the act will be defeated by allowing a removal of the grantee and the property *animo manendi*, and a failure to record at the place

of removal, then we may also look to the question of actual notice, and we see at once that if we were disposed to go beyond the strict requirements of the act, and hold it necessary to record in St. Louis county after the removal of the grantor there, we could not, with any propriety, apply the rule to a creditor living in Pike county, where the deed was made and recorded, and where the suit was brought; so that whether we adopt the construction of a like statute in Massachusetts (Bingham v. Weaver, 6 Cush. 299), or not, the result in this case would be the same. It has been argued that the deed to Bevans, the plaintiff, is void on its face, but we have not been able to see any plausible ground for this assertion. The deed is to be construed as allowing the grantor to retain possession of the personal property. That circumstance does not make it void; for the failure to change the possession is prevented from affecting the validity of the deed by recording it. It is also said that there was no power of sale given the trustee; he was "authorized and empowered to superintend and see to the disposal of the said personal property, that the proceeds may go towards liquidating and satisfying the aforesaid notes," &c. So far as the title of Bevans was concerned, it is not material whether the instrument be regarded as a mortgage or a deed of trust; nor is an express authority to sell of any consequence to its validity. It is sufficient that the legal title is conveyed for purposes which were legitimate. If the defendants bought an equity of redemption, the plaintiff is nevertheless entitled to the possession for the purpose of executing his trust. But, in fact, as the evidence shows, the property was altogether insufficient to pay the debts designed to be secured.

The instructions asked by the defendants were properly refused; several of them were on the subject of actual fraud. There was no evidence of any actual fraudulent design on the part of any of the parties to the deed; the answer did not allege any. Judgment affirmed.