DANIEL W. GARLAND and another in equity,

*vs.*

WILLARD R. PLUMMER and others.

Penobscot. Opinion June 22, 1881.

*Chattel mortgage. Fund representing mortgaged property. Title of mortgagee, and assignee of the mortgagor.*

A title by purchase from a mortgagor of a chose in action or fund, that represents mortgaged personal property, takes precedence under our statute of the title under the mortgage to the property which is represented by such fund, where the mortgage had never been recorded.

BILL IN EQUITY, heard on bill, answer and proof.

The bill sets out that Willard R. Plummer, having a permit to cut and carry away hemlock logs from land in Edinburg during the logging season of 1872-3, cut about seven hundred thousand feet of such logs, and February 18, 1873, assigned the permit to the plaintiffs to secure them for the lumbering supplies, etc. furnished him; that the logs while on the way to market were

greatly damaged and destroyed by the wrongful acts of the Penobscot Lumbering Association; that Plummer instituted a suit against that association for the damage thus sustained by him. While the action was pending, Plummer assigned it to John A. Eames, and Eames assigned to Alfred E. Nickerson. Judgment was in favor of the plaintiff there, and these plaintiffs seek to share in the same to a sum little rising $350, being the amount due them from Plummer, and secured by the assignment of the permit. Plummer, Eames, Nickerson and the Penobscot Lumbering Association were made parties defendant in the bill.

*Wilson and Woodward,* for the plaintiffs.

The assignment of the permit to the plaintiffs gave them title in the logs as against Plummer and all persons claiming under him. *Fiske* v. *Small,* 25 Maine, 453; *Sawyer* v. *Wilson,* 61 Maine, 529.

They can follow not only the logs but the proceeds. *Prentiss* v. *Garland,* 67 Maine, 345; *Rice* v. *Cobb,* 9 Cush. 302; *Farnsworth* v. *Boston,* 121 Mass. 173.

In a court of equity the plaintiffs will be regarded as mortgagees. 2 Story's Eq. Jur. § 1018.

There can be no doubt that the plaintiffs are entitled to so much of the damage to the property mortgaged as will pay the mortgage debt. And equity is the proper remedy. *Wilson* v. *E. & N. A. Ry Co.* 67 Maine, 358.

It is well settled on authority and principle that a purchaser of a chose in action is not within the rule which protects purchasers for valuable consideration, and that the vendee will not only take no better title than that of his vendor but will not be entitled to set up the purchase as a bar to equitable relief in favor of prior equities created by the vendor. *Downer* v. *So. Royalton Bank,* 39 Vt. 25; *Covell* v. *The Tradesman Bank,* 1 Paige, 131; *Cockrell* v. *Taylor,* 15 Eng. L. & Eq. 101; *Mangles* v. *Dixon,* 18 Eng. L. & Eq. 82; *Sargent* v. *Southgate,* 5 Pick. 312; *Bartlett* v. *Pearson,* 29 Maine, 9.

*E. C. Brett,* for the defendants Eames and Nickerson, cited: *Googins* v. *Gilmore,* 47 Maine, 9; *Bussey* v. *Page,* 14 Maine,

132; *Treat* v. *Gilmore*, 49 Maine, 34; *Wilson* v. *E. & N. A. Ry Co.* 67 Maine, 358; *Amee* v. *Wilson*, 22 Maine, 116; *Chadbourne* v. *Hanscom*, 56 Maine, 554; *Jenness* v. *Mt. Hope Iron Co.* 53 Maine, 20.

Plummer and the Penobscot Lumbering Association filed no answers and present no briefs.

SYMONDS, J. In this bill in equity, a decree is sought, adjudging the complainants owners, in part, of a judgment recovered in the name of Willard R. Plummer against the Penobscot Lumbering Association, declaring the nominal judgment-creditor the trustee of the complainants in respect to the judgment to the extent of their claim against him for supplies, and commanding the judgment-debtors to pay the balance due upon the supply bill out of the amount of the judgment against them.

If we assume that there is a balance of about $300, still due from Plummer to the complainants, for supplies, as they allege; that this balance was secured by the assignment to them, February 18, 1873, of Plummer's permit from Eames and Godfrey, being in effect a mortgage to the complainants of the logs then cut under the permit (and there is no proof that any of the logs destroyed were subsequently cut;) that no prior lien upon the logs or their proceeds for stumpage, exists; that the judgment against the lumbering association represents in part the proceeds of the logs so mortgaged, and that the complainants, as mortgagees, may follow in equity the proceeds of the mortgaged property and hold their lien upon the fund as if it were the logs themselves, the question still remains whether the bill can be maintained against the assignees of the judgment who purchased for value; the mortgage not having been recorded.

The purchaser of a chose in action on which an action is pending takes subject to all the equities relating to it, between the litigating parties; and ordinarily acquires only the right of his assignor, who can convey simply his own interest, not that of another, in the claim.

But the facts of this case are peculiar. The action against the Lumbering Association, while pending, was first assigned January, 21, 1875, by the plaintiff, Plummer, to Eames, and

afterwards, March 27, 1877, by Eames to Nickerson, in each instance for a valuable consideration. The complainants seek to hold a part of that judgment against the assignees, on the ground that it was recovered for logs mortgaged to the complainants by the plaintiff in that action and destroyed or lost by the negligence of the defendants, and so should take the place of, or be regarded in equity as if it were the logs so destroyed. The claim is, substantially, that the fund in the hands of the judgment-debtors, to be paid on the execution, *is* the mortgaged property in another form, reduced to money.

The mortgage to the complainants, not having been recorded would not be valid against Eames or Nickerson, if the logs had been in existence and they had bought the logs, instead of buying the suit pending to recover damages for the loss or destruction of them. Nor would notice of the complainants' mortgage in such case, without record, have defeated the title by purchase. *Rich* v. *Roberts*, 48 Maine, 548 ; *Sheldon* v. *Conner*, 48 Maine, 584.

The question then is simply this : Can the complainants in equity assert a superior right, and enforce it, against purchasers of a suit pending to recover damages for the destruction of property, when a purchase under the same circumstances of the property itself, had it been in existence, would have given title superior to the complainants' mortgage?

We think it must be answered in the negative. When mortgaged property is reduced to money, if the fund is to be regarded as the property itself for the benefit of the mortgagee, to uphold his lien, it must be regarded in the same way in determining priority of right between the mortgagee and a purchaser for value.

The right of the complainants to the fund is no greater than their right to the property, and can only prevail against those in reference to whom the complainants' title to the logs under the same circumstances would be superior. The purchaser of a chose in action is advised that he takes it subject to all legal defences, but he as naturally expects to get good title to the claim, whatever it may be, from the person to whom it is nominally due and

who is prosecuting a suit to recover it, as to obtain title to a chattel by buying it of one who assumes to be the owner. It is no more equitable in the general sense of the term for the unrecorded mortgage to prevail in the one case than in the other. The statute is imperative. "No mortgage of personal property shall be valid against any other person than the parties thereto," unless the mortgagee has possession or the mortgage is recorded. The mortgage to the complainants was not recorded; they were not in possession. Yet they seek indirectly to make their mortgage effective against one who has purchased a judgment recovered for the destruction of the mortgaged property, who was not a party to the mortgage, who paid a valuable consideration, and against whom there is no allegation of fraud or collusion. To sustain the claim would be to make the unrecorded mortgage valid against others than the parties to it, in contravention of the statute.

In *Murray* v. *Sylbum*, 2 Johns. ch. R. 442, it was said by KENT, the chancellor, "It is a general and well settled principle, that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor. But this rule is generally understood to mean, the equity residing in the original obligor or debtor, and not an equity residing in some third person against the assignor. He takes it *subject to all the equity of the assignor,* say the judges in the very elaborately argued case of *Norton* v. *Rose*, 2 Wash. R. 233, 254, on this very point, touching the rights of the assignee of a bond. The assignee can always go to the debtor, and ascertain what claims he may have against the bond, or other chose in action which he is about purchasing from the obligee; but he may not be able with the utmost diligence, to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries; and for this reason, the claim of the assignee without notice, of a chose in action was preferred in the late case of *Redfearn* v. *Ferrier*, 1 Dow. R. 50, to that of a third party setting up a secret equity against the assignor. Lord ELDON observed in that case, that if it were not to be so, no

assignments could ever be taken with safety. I am not aware that this decision was the introduction of any new principle in the case of actual *bona fide* purchases or assignments by contract; though Lord THURLOW said in one case, that the purchaser of a chose in action must abide by the case of the person from whom he buys; but he spoke this on a question between the assignee and the debtor. In assignments by operation of law, as to assignees of bankrupts, the case may be different; for such assignments are said to pass the rights of the bankrupt, subject to all equities, and precisely in the same plight and condition as he possessed them."

There are cases that seem opposed to this language of the learned chancellor, and the later case of *Covell* v. *Tradesman's Bank*, 1 Paige R. 131, cited by the complainants, may perhaps limit or question it. The cases, however, which assert the contrary as the general rule, admit that there are exceptions to the rule which they adopt, arising in special and peculiar relations of fact.

But without attempting to define the precise limits of the doctrine, as applicable to all varieties of cases, presenting widely different circumstances, we are satisfied the distinction we have drawn is one that the law raises upon the facts of the present case.

If the complainants seek to share in a fund, on the ground that it represents mortgaged property, the question between the complainants and the respondents is, in what relation to mortgaged property do the respondents stand. Their relation to the fund being that of purchasers for value, they are as much purchasers for value of the mortgaged property, as the complainants are mortgagees of the fund; and in such case, under our statute, the title by purchase from the mortgagor takes precedence of that by mortgage unrecorded.

*Bill dismissed with costs,*

APPLETON, C. J., WALTON, BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.