KATHERINE V. HOWARD vs. DONALD T. McPHAIL.

JULY 7, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)   *Chattel Mortgages.*

Under a mortgage of personal property the legal title is transferred subject to defeasance only on performance of the conditions, and a mortgagor in possession occupies the position of a bailee.

(2)   *Equity.   Chattel Mortgages.   Notice.   Title.   Fraud.*

Gen. Laws, cap. 258, § 10, provides that "No mortgage of personal property shall be valid as to the assignee in insolvency of the mortgagor, or any other person except the parties thereto and their executors and administrators, until possession of the mortgaged property be delivered to and retained by the mortgagee, or the said. mortgage be recorded,—which said recording or taking and retention of possession 'shall be made or taken within five days from the date of the signing thereof."

September 28, 1910, A executed a chattel mortgage to B.   A. retained possession and B did not record the mortgage until October 26, 1910.   July 18, 1911, A executed a bill of sale of the property to C who had actual notice of the existence of the mortgage and that it had been recorded.   C took possession of the property and brought a bill to restrain the mortgagee from interfering with it and also for the cancellation of the mortgage.

*Held,* that in equity, C took the property bound by the trust and subject to the equities of the mortgagee, although the mortgage was lacking in the requisites of registry necessary to make it valid at law.

*Held,* further, that both the mortgagor and her transferee in the sale of the property in disregard of the title of the mortgagee were guilty of actual fraud, and notwithstanding the absolute language of Gen. Laws, cap. 258, § 10, the statute was subject to an exception, that in equity an instrument valid between the parties thereto would be valid as to other persons having actual knowledge of it.

PARKHURST AND VINCENT, JJ., dissenting.

BILL IN EQUITY.   Heard on certification after hearing in Superior Court for final decree upon an agreed statement of facts.

SWEETLAND, J.   This is a suit in equity wherein the complainant seeks to restrain the respondent from taking possession of certain personal property and from foreclosing or treating as valid a mortgage thereon.   The complainant

also prays that said mortgage be ordered to be delivered up for cancellation.

After the pleadings were closed and after hearing in the Superior Court for final decree upon an agreed statement of facts the cause was certified to this court for final determination. The essential facts set out in the agreed statement are as follows: On September 28th, 1910, one Julia M. Vaill, now deceased, for valuable consideration, executed and delivered to the respondent, McPhail, a chattel mortgage covering certain personal property then owned by and in the possession of the mortgagor, located in the town of New Shoreham. The respondent, said mortgagee, did not take possession of the mortgaged chattels, and did not file said mortgage for record until October 26th, 1910. Said mortgage is now held by the respondent and the debt as security for which said mortgage was given, has not been paid. At some time in November, 1910, the complainant had actual notice of the existence of said mortgage and of the record of said mortgage in New Shoreham. On July 18th, 1911, said Julia M. Vaill, the mortgagor in said mortgage, executed and delivered to the complainant a bill of sale of the personal property covered by said mortgage. The consideration named in said bill of sale was two thousand dollars. Thereupon the complainant took possession of said personal property, still retains possession thereof, and has filed this bill to restrain the respondent from interfering with said chattels, and also for the cancellation of said mortgage.

The complainant's prayer is based upon her interpretation of Section 10, Chapter 258, Gen. Laws, 1909. The portion of said section, pertinent to the case, is as follows: "No mortgage of personal property hereafter made shall be valid as to the assignee in insolvency of the mortgagor, or any other· person except the parties thereto and their executors and administrators, until possession of the mortgaged property be delivered to and retained by the mortgagee, or the said mortgage be recorded" . . . "which said recording or taking and retention of possession as aforesaid shall be made

or taken within five days from the date of the signing thereof." The complainant relies largely upon the authority of *Burdick* v. *Coates*, 22 R. I. 410, which was an action at law upon a state of facts, unlike that of the case at bar; and did not involve a consideration of the principles of trusts and of fraud which should govern the determination of the case before us.

An important provision in said section is that the mortgage remains valid as to the parties, although possession of the mortgaged property be not delivered to and retained by the mortgagee and the mortgage be not recorded. The situation then, on July 18th, 1911, before Julia M. Vaill made the bill of sale of said chattels to the complainant, was that Miss Vaill had by a valid instrument conveyed the title of said chattels to this respondent defeasible on payment of the mortgage debt. For a personal property mortgage is more (1) than a security; it transfers the legal title subject to defeasance only on performance of the conditions. Although she was permitted by the respondent to retain possession of said chattels, Miss Vaill's possession was that of a bailee; there remained in her only the right to redeem said property on performance of the conditions of the mortgage. The question before us therefore is: Will a court of equity, by reason of the provisions of said section of the statute, decree that Miss Vaill who was without title herself, nevertheless was able to convey title to this complainant, who had actual (2) notice and full knowledge of the respondent's rights under the mortgage and of the impropriety of Miss Vaill's act? For whatever may be determined as to the position of the complainant, Miss Vaill was guilty of actual fraud in selling said chattels in disregard of the rights of the respondent, unless her bill of sale shall be considered in equity merely as a disposition of her right to redeem and not as an attempt to convey title to said property; in which case the complainant clearly would not be entitled to the relief which she seeks. This court in *Goodell* v. *Fairbrother*, 12 R. I. 233 and *Woods* v. *Nichols*, 21 R. I. 537, has stated the generally recognized

principle that otherwise than by estoppel the purchaser acquires no better title than the vendor from whom he buys. The complainant cannot claim that any doctrine of estoppel works in her favor against the respondent, because although he allowed the mortgaged property to remain in the mortgagor's possession, nevertheless before the complainant took said bill of sale she had knowledge of the mortgage and that it had been recorded. She must claim that in some way, by reason of the statute, despite the absence of circumstances creating an estoppel, and in spite of her knowledge of the facts, she has acquired from Miss Vaill a title that Miss Vaill herself did not have, and that equity will confirm that title to her. The purpose of statutes requiring the registry of mortgages or other conveyances is to prevent fraud and deception by protecting bona fide purchasers and creditors from the effect of secret encumbrances. Their purpose is to prevent not to assist fraudulent transactions. This court said with reference to the absolute language of a recording act under consideration in *Wilson* v. *Esten*, 14 R. I. 621: "The statute, however, must receive a reasonable construction." In well considered cases in this court registry statutes have received a reasonable construction. This court has not lost sight of the purpose of such statutes and the fundamental principles of equity; and has recognized that, even where the language of the statute, taken literally, is absolute, it may still be the subject of exception. *Wilson* v. *Esten*, 14 R. I. 621; *Miller* v. *Coffin*, 19 R. I., at page 168; *Westerly Savings Bank* v. *Stillman*, 16 R. I. 497. The last case will be considered more fully later.

The complainant has invoked the aid of a court of equity and her suit must be considered in accordance with equitable principles. Before taking up the important question of the effect upon the complainant's rights of her vendor's fraud, of which she had full notice and in which she participated, I will consider how far the knowledge by the complainant of the respondent's rights in the mortgaged property, at the time of her purchase, raises a trust as to said property in favor of the respondent against the complainant.

Equity looks upon that as done which the parties intended to do and which ought to be done.  As against the parties themselves and those who purchase with notice, an agreement, intended to effect a transfer of property or to create a lien upon it or an equity in it, though lacking in some legal requisite, will be upheld in equity, which binds the conscience; and in such circumstances a court of equity, as against the party himself and as against a purchaser with notice will raise a trust.  *Legard* v. *Hodges*, I Ves. Jr. p. 477.

*Coble* v. *Nonemaker*, 78 Pa. St. 501, was a suit by a mortgagee of an unrecorded chattel mortgage against a subsequent purchaser of the chattels covered by said unrecorded mortgage, of which the purchaser had notice at the time of his purchase.  The court said: "Considered in another aspect, the case seems equally plain.  While the title remained in Eves (the mortgagor), he held it bound by the trust for the benefit of the plaintiff which the mortgage had created.  When the title was passed to the defendant, he, having notice of the plaintiff's equities, became by operation of law, invested with the character of trustee with precisely the same obligations that the contract expressly imposed on Eves (the mortgagor).  A trust already in existence, and annexed to the present subject-matter, is created *de novo* as against a person who takes by a title derivative from the original trustee:  Lewin on Trusts 205.  If an estate be passed by a trustee to a stranger by conveyance, then the grantee, if he be a volunteer, will be bound by the trust, whether he had notice of it or not; for though he had no actual notice of the equity, yet the court will presume it against him where he paid no consideration:  *Id.* 206; *Mansell* v. *Mansell*, 2 P. Wms. 678, 681.  But if the grantee be  a purchaser of the estate at its full value, then if he take with notice of the trust, he is bound to the same extent and in the same manner as the person of whom he purchased: *Dunbar* v. *Tredennick*, 2 B. & B. 319, for knowing another's right to the property, he throws away his money voluntarily and of his own free will:  *Mead* v. *Lord Orrery*, 3 Atk.

235. And the rule applies not only to the case of a trust properly so called, but to purchasers with notice of any equitable encumbrance, as of a covenant or agreement affecting the estate (*Daniels* v. *Davison*, 16 Vesey 249), or a lien for purchase-money: *Mackreth* v. *Symmons*, 15 Vesey 329. The defendant (the subsequent purchaser) then held these goods subject to the equities of the plaintiff (the mortgagor), under the mortgage."

In the early and leading case in this country of *Mitchell* v. *Winslow*, 2 Story's Reports, 644, Judge Story said: "It seems to me a clear result of all the authorities, that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto, under him, either voluntarily, or with notice, or in bankruptcy."

In accordance with this principle it was held in *Williams* v. *Winsor*, 12 R. I. 9, that a mortgage of personal property to be subsequently acquired, though invalid at law, will be upheld in equity.

In *Westerly Savings Bank* v. *Stillman*, 16 R. I. 497, this court considered the validity of the mortgage of a corporation to which the treasurer had affixed a seal and as to which act of the treasurer there was no allegation of authorization, which mortgage was not acknowledged and recorded as required by statute. The court said: "The statute, however, only applies to deeds, and it is not clear that the mortgage in question is a deed; for though the treasurer of the corporation affixed a seal to it, it is not alleged that he was authorized to do it. If the mortgage be not a deed, it is inoperative at law as a conveyance, and would bind the estate only in equity, where it would undoubtedly be enforced between the parties according to its intent. Would

it likewise bind the estate as against a subsequent mortgagee or purchaser for value with notice? We think so. The general rule is, that a purchaser with notice of the right of another, is in equity liable to the same extent and in the same manner as the person from whom he purchases."

In *Mayo* v. *Newhoff*, 47 N. J. Eq. 31, at 38, the court of chancery of New Jersey recognized the general rule laid down by Lord Cottenham in *Tulk* v. *Moxhay*, 2 Phil. 774, that if an equity is attached to property by its owner, no one purchasing with notice of that equity can stand in a different situation from the owner, and that this rule is applicable to personalty.

In *Porter* v. *Parks*, 49 N. Y. 566, the court said: "While, therefore, the law is well settled, as claimed on behalf of the respondents, that where a party, by his own act and consent, has given to another the evidence of ownership and the apparent *jus disponendi* of property, a bona fide purchaser from the apparent owner, or one who advances money or incurs responsibilities on the faith of the title, will be protected, it is equally well settled that if the party dealing with the apparent owner has actual notice of the rights of the true owner, he acquires no better title than the transferor or apparent owner can lawfully convey. In other words, the purchaser or pledgee is not a *bona fide* purchaser as against the rightful owner, and is not within the protection of the rule invoked by the defendants, and must rely upon the actual, rather than the apparent, authority of the individual with whom he deals for his protection."

In *Bernheimer* v. *Verdon*, 63 N. J. Eq. 312, the court affirmed a decree of the Vice Chancellor, whose opinion is reported in 49 Atl. Rep. 732. The Vice Chancellor held: that where the purchaser of personalty located in a certain place has notice of another's claim to a mortgage thereon, before taking the bill of sale, equity will direct the execution of a mortgage by the purchaser on such personalty as was in such place at the time of purchase, and still remaining in the purchaser's hands.

In 2 Story's Equity Jurisprudence at p. 577, the author says: "Indeed, there is generally no difficulty in equity in establishing a lien not only on real estate, but on personal property, or on money in the hands of a third person, where- ever that is a matter of agreement at least against the party himself, and third persons who are volunteers or have notice. For it is a general principle in equity that as against the party himself, and any claiming under him voluntarily or with notice, such an agreement raises a trust."

Mr. Pomeroy in his work on Equity Jurisdiction (2nd Ed.) § 591, says: "When a person is acquiring rights with respect to any subject-matter, the fact whether he is so acting with or without notice of the interests or claims of others in or upon the same subject-matter is regarded throughout the whole range of equity jurisprudence as a most material circumstance in determining the extent and even the existence of the rights which he actually acquires. In conformity with this view, the general rule has been most clearly established, that a purchaser with notice of the right of another is in equity liable to the same extent and in the same manner as the person from whom he made the purchase. The same rule may be thus expressed in some- what different language: a person who acquires a legal title or an equitable title or interest in a given subject-matter, even for a valuable consideration, but with notice that the subject-matter is already affected by an equity or equitable claim in favor of another, takes it subject to that equity or equitable claim."

It therefore appears clear from the authorities that, in equity, this complainant having knowledge of the agreement between Miss Vaill and the respondent to create a lien upon the chattels in question would take the same bound by the trust as Miss Vaill was bound and subject to the equities of the respondent, although the instrument which evidenced the agreement be defective in legal form and in execution, and be lacking in the requisites of acknowledgment and registry necessary to make a mortgage valid in law. It is a well

recognized equitable principle that an attempt to make a legal mortgage which fails for want of some solemnity, may yet create a lien valid in equity. Therefore, if we should grant the prayer of the complainant's bill, we should effect this result: that a decree shall be entered in this cause in equity which will permit the complainant to hold said mortgaged property freed from the trust by which in good conscience and according to established principles of equity she should be bound.

I will now consider the question of fraud which is involved in the cause. As we have said above Miss Vaill in selling said chattels in disregard of the title and ownership of the respondent was guilty of actual fraud. What was the position of the complainant in the transaction as it relates to another equitable consideration important in the case? Story says (I Story Eq. Juris., § 395): "Another class of constructive frauds consists of those where a person purchases with full notice of the legal or equitable title of other persons to the same property. In such cases he will not be permitted to protect himself against such claims, but his own title will be postponed, and made subservient to theirs. It would be gross injustice to allow him to defeat the just rights of others by his own iniquitous bargain. He becomes by such conduct *particeps criminis* with the fraudulent grantor; and the rule of equity as well as of law is, '*Dolus et fraus nemini patrocinari debent.*' And in all such cases of purchases with notice courts of equity will hold the purchaser a trustee for the benefit of the persons whose rights he has thus sought to defraud or defeat."

In the case of *Dunbar* v. *Tredennick*, 2 Ball & B. p. 319, the court said: "Why then, what is the situation of a purchaser with notice of a fraudulent title? It certainly may be stated as a general proposition, that a purchaser with notice, is, in equity, bound to the same extent, and in the same manner, as the person from whom he purchased; or as Lord *Rosslyn* states it in *Taylor* v. *Stibbert*, 'If he is a purchaser with notice, he is liable to the same equity, stands in his place,

and is bound to do that, which the person he represents would be bound to do by the decree.' What would *Weir* (the purchaser) be bound to do? Why, to deliver up these deeds to be cancelled, or to reconvey, and to restore the possession; for notice operates by affecting the conscience of the party. He is a purchaser, it is true, for a valuable consideration, but he is not a *bona fide* purchaser: he takes a legal title, knowing the right in equity to belong to another; this is the reasoning of Lord *Hardwicke* in *Le Neve* v. *Le Neve.* He is not a party to the original fraud, but if I may apply the reasoning to a civil right, he is an accessary after the fact.''

Mr. Justice Brewer then a member of the Supreme Court of Kansas said in *Phillips* v. *Reitz*, 16 Kan. 397: ''If the vendee knew of the fraudulent intent of the vendor and bought with that knowledge, he can scarcely claim to be a bona fide purchaser, for he was knowingly helping the vendor to accomplish the fraud and do the wrong.''

Among many authorities on the point are the following: ''He who takes title to property with knowledge or notice that that title is tainted with fraud takes it with no better right than he had who was guilty of the fraud; that is, the fraud of the actual wrongdoer may, on the question of title, be alleged against his successor on taking the property.'' Bigelow on The Law of Fraud, Vol. 1, § 12.

''The meaning of 'good faith' is synonymous with 'conscience.' It embraces those obligations which are imposed upon one, in dealing with property, by the circumstances surrounding it at the time. The taking of a legal estate after notice of a prior right makes a person a *mala fide* purchaser. Undoubtedly, it is an act savoring of fraud for a person who has received actual direct notice of another's right to go on, and knowingly acquire the property in violation of that other's right.'' Jones Ch. Mort. (5th ed.) p. 699, § 484.

''In its results, 'good faith' is synonymous with 'conscience.' It embraces those obligations which are imposed

upon one, in dealing with property, by the circumstances surrounding it at the time.   It is not questioned but that, at the time defendants' mortgages were taken, the property was subject to complainant's lien; that Pfaff (the mortgagor) held it subject to complainant's right.   That right continues until cut off by a superior right,—by a right which, in conscience, is entitled to preference.   It is fundamental that such preference cannot be acquired by any one having notice of the existing right.   Lord Hardwicke laid it down that the taking of a legal estate after notice of a prior right makes a person a *mala fide* purchaser.   *Le Neve* v. *Le Neve*, 2 White & T. Lead. Cas. Eq. (4th Am. Ed.) 109.   Undoubtedly, it is an act savoring of fraud for a person who has received actual, direct notice of another's right to go on, and knowingly acquire the property, in violation of that other's right."   *Reiderer* v. *Pfaff*, 61 Fed. 872.

*Reiderer* v. *Pfaff* was a suit for the foreclosure of a chattel mortgage.   The question considered by the court was whether the complainant, who had failed to comply with a statutory requirement as to filing affidavit of the renewal of his mortgage, lost the priority of his mortgage against the claim of a subsequent mortgagee with notice.

"It will, therefore, be assumed as a settled principle, that a person claiming property under a deed or conveyance, which has been duly executed and recorded, must take it subject to all other claims, of which he has had actual notice before the execution of his deed.   Because after such notice, the accepting and recording of a conveyance, must be considered in equity as fraudulent, since the party actually had that notice which it was intended by the act of the assembly he might have had by the recording of the conveyance of the prior claimant."   *Hudson* v. *Warner*, 2 Harr. & G. 415.

"It is an undoubted principle of equity that the owner of property may follow and reclaim it wherever he can find and identify it, until arrested in the pursuit by the countervailing equity of a *bona fide purchaser*, for a *valuable consideration paid*.   A purchaser with notice that the sale is a breach of

trust, or a fraud upon the rights of the real owner, is *particeps criminis* with the fraudulent vendor, and his purchase cannot protect him against the owner, because such a purchase is not *bona fide."* *Garrard* v. *Pittsburgh and Connelsville R. R. Co.,* 29 Pa. St. 158.

Does this complainant escape the effect of the equitable doctrine which we are now considering by reason of the language of the statute in question? According to the best authority she does not. In the early and celebrated case of *Le Neve* v. *Le Neve,* 2 W. & T. Leading Cases in Equity 187, 3 Atk. 646, decided in 1747, Lord Hardwicke considered the effect in equity of the absolute language of an early registry act "that every such deed shall be void against any subsequent purchaser or mortgagee unless the memorial thereof be registered." The chancellor said: "What appears, by the preamble, to be the intention of the act? Plainly, to secure subsequent purchasers and mortgagees against *prior secret conveyances* and fraudulent incumbrances.

"Where a person had no notice of a prior conveyance, there the registering his subsequent conveyance shall prevail against the prior; but if he had notice of a prior conveyance, then that was not a secret conveyance by which he could be prejudiced.

"The enacting clause says *that every such deed shall be void against any subsequent purchaser or mortgagee,* unless the memorial thereof be registered, etc.; that is, it gives him the legal estate, but it does not say that such subsequent purchaser is not left open to any equity which a prior purchaser or incumbrancer may have; for he can be in no danger when he knows of another incumbrance, because he might then have stopped his hand from proceeding." . . . "The operation of both acts of parliament and the construction of them is the same; and it would be a most mischievous thing if a person, taking that advantage of the legal form appointed by an act of Parliament, might under that protect himself against a person who had a prior equity, of which he had notice." . . .

"The ground of it is plainly this:   That the *taking of a legal estate after notice of a prior right, makes a person a mala fide purchaser;* and not, that he is not a purchaser for a valuable consideration in every other respect.    This is a species of fraud and *dolus malus* itself; for he knew the first purchaser had the clear right of the estate, and after knowing that, he takes away the right of another person by getting the legal estate."    .    .    .    "Now, if a person does not stop his hand, but gets the legal estate when he knew the right was in another, *machinatur ad circumveniendum.*   It is a maxim, too, in our law, that *fraus et dolus nemini patrocinari debent.*  Fraud, or *mala fides,* therefore, is the true ground on which the court is governed in the cases of notice."   *Le Neve* v. *Le Neve,* White & T. L. Cas. (8th Ed.) Vol. II. pp. 192, 193, 196.

The principle announced in *Le Neve* v. *Le Neve* as applicable to the rights of a subsequent purchaser or mortgagee, having actual notice of a prior unrecorded mortgage, notwithstanding the unqualified language of a registry act, has been generally accepted by courts of equity and textwriters upon the subject from 1747 to the present.   It has been followed by this court as a proper interpretation of a registry statute and as stating an exception to be understood as modifying the absolute language of such statutes when the language, upon a literal reading appears to be in conflict with the purpose of such acts and with the equitable doctrine of constructive fraud arising from notice.   The principle was recognized in *Harris* v. *Arnold,* 1 R. I. 125, at pages 136 and 137; it was fully considered and approved in *Westerly Savings Bank* v. *Stillman,* 16 R. I. 497, in an opinion written by Chief Justice Durfee; and has never been questioned by this court since that time.

*Westerly Savings Bank* v. *Stillman* was a suit in equity to establish the lien of a mortgage which had not been acknowledged and recorded in conformity with a statutory provision. The language of the statute then under consideration was that of Sec. 4, cap. 173, Pub. Stat. R. I., as follows:   "Section

3

4. All bargains, sales, and other conveyances whatsoever of any lands, tenements, or hereditaments, whether they be made for passing any estate of freehold or inheritance, or for term of years exceeding the term of one year, and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void, unless they shall be acknowledged and recorded as aforesaid: *Provided*, that the same, between the parties and their heirs, shall nevertheless be valid and binding." The court said: "The section referred to declares that all conveyances of real estate for more than a year, and all deeds of trust and mortgages, shall be void unless they shall be acknowledged and recorded, provided that between the parties and their heirs they shall be valid. The language, taken literally, is absolute, and, under it so taken, A might stand by and see B convey a lot of land to C by deed, and then take a deed from B of the same lot in due form, and if the deed to C should happen not to have been acknowledged, or, if acknowledged, should happen not to have been forthwith recorded, could acquire the better title by lodging his deed for record. We do not understand, however, that this section has ever been construed so as to permit this; on the contrary we understand that it has always, notwithstanding the absoluteness of its language, been construed to be subject to an exception, implied from its purpose as a provision for the protection of *bona fide* purchasers and creditors, to the effect that any deed valid between the parties and their heirs, though neither acknowledged nor recorded, shall likewise be valid as to other persons having actual notice of it; so that if any other person having such notice take a conveyance of the land covered by the prior deed, he will take it subject to any right, title, or interest therein created by the prior deed as fully as if the prior deed had been duly acknowledged and recorded. It is true that we do not find this construction given to the section by actual decision in any reported case, but there are reported cases in which the construction is recognized. *Taylor et ux.* v. *Luther*, 2 Sumn. 228; *Nichols* v. *Reynolds*, 1

R. I. 30, 36. The construction is confirmed by numerous decisions under similar statutes in other states, some of which follow: *Norcross* v. *Widgery*, 2 Mass. 506; *State of Connecticut* v. *Bradish*, 14 Mass. 296; *Trull* v. *Bigelow*, 16 Mass. 406; *Jackson, dem. Gilbert* v. *Burgott*, 10 Johns. Rep. 457; *Van Rensselaer* v. *Clark*, 17 Wend. 25; *Rogers* v. *Jones*, 8 N. H. 264; *Emmons* v. *Murray*, 16 N. H. 385; *Hart et al.* v. *Farmers & Mechanics Bank et al.*, 33 Vt. 252; *Ohio Life Insurance Co.* v. *Ledyard*, 8 Ala. 866; *Rupert et al.* v. *Mark*, 15 Ill. 540; *Correy's Lessee* v. *Caxton & Rees*, 4 Binney, 140. The Massachusetts statute provided that the conveyance should not 'be good and effectual against any other person than the grantor and his heirs unless acknowledged and recorded.' 'But,' said PARSONS, C. J., in *Norcross* v. *Widgery, supra*, 'if the second purchaser has notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act.' This construction finds countenance in the wording of the statutes of some of the states; but the construction is the same, generally, even where the statutes declare unqualifiedly that unregistered conveyances shall be void as against purchasers, or as against all persons who are not parties to the conveyance. *Le Neve* v. *Le Neve*, Ambler, 436; 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 109, and cases cited in American notes on pages 213, 214. We think our statute always has been and should continue to be construed in the same manner."

It should be observed that the language of the section then under consideration is as absolute and unqualified as that of the section now before us.

The provision of said section of the public statutes was that the conveyances named therein should be void unless acknowledged and recorded. The provision of Section 10 of the General Laws, 1909, is that no mortgage of personal property shall be valid as to any person until possession of the mortgaged property be taken and retained by the mortgagee or the mortgage be recorded. In each of these sections there is a similar provision making the respective conveyances valid

as to the parties thereto, although the respective statute be not complied with. Is there any other provision in Section 10 of the General Laws which renders the rule of construction adopted in *Westerly Savings Bank* v. *Stillman,* inapplicable to that section? In said Section 10 there is the further provision that the recording or the taking and retaining of possession shall be made or taken within five days from the date of the signing of the mortgage. Does this clause render said Section 10 essentially different from said section of the Public Statutes and relieve it from the application of the rule laid down in *Westerly Savings Bank* v. *Stillman?* It is clear that to hold thus would be to attempt to draw a distinction between the two sections, in regard to the point now under consideration, which is altogether unreasonable and illogical. It would be to magnify a verbal variance into a vital and legal distinction where none could have been intended. By the provisions of said section of the public statutes the conveyances therein named were to be invalid as to all persons save the parties thereto unless said conveyances were acknowledged and recorded; the strongest interpretation that can be placed upon the later act, regarding personal property mortgages, is that they are to be invalid as to all persons except the parties thereto unless possession of the chattels be taken and retained or unless said mortgages be recorded in five days. According to the strict language of each section a condition of invalidity is provided for if the requirement of the respective statute is disregarded, in one case if the conveyance is not acknowledged and recorded, in the other if the mortgagee fails to do one or the other of the things therein prescribed within five days. It would be a perversion of reasoning to hold that the legislature intended to provide for a higher or a different degree of invalidity in the latter section than in the former, or to create in the latter section a condition of invalidity which would be unaffected by any equitable principle, which should be applied to the former. I take it there are no degrees of invalidity. Under the former section the holder of certain

conveyances, unacknowledged and unrecorded, according to the absolute language of that section, was the holder of an invalid conveyance save as to the parties. Under the latter section the holder of a chattel mortgage who had not taken and retained possession of the chattels or had not recorded said mortgage within five days, by the absolute language of that section, was the holder of an invalid personal property mortgage save as to the parties. Each holder under the conditions named was in exactly the same category as to the validity of his conveyance or his mortgage and a rule of construction applicable to one statute, which declared the invalidity of the conveyance, is equally applicable to the other statute which declared the invalidity of the chattel mortgage. In one case the invalidity was based upon the absence of acknowledgment or record; in the other it was based upon the absence of possession or record within five days. The test of validity or invalidity, provided in the two cases, differed, but the condition of invalidity was the same. In *Westerly Savings Bank* v. *Stillman,* the court was dealing with an instrument which was claimed to be invalid by one test; we are dealing with an instrument which is claimed to be invalid according to the other test. But in each case the invalidity claimed is based upon like unlimited statutory language. I have sought to emphasize the consideration that the language employed in each of these two sections, taken literally, is equally absolute and without exception; that for the same purpose, which is behind all registry statutes, with no stronger or different purpose in one act than in the other the legislature, by language equally positive, has provided for the invalidity of certain instruments in the circumstances respectively set out in the two acts; and that in the construction of both acts any equitable principle which would read an exception into the absolute language of one, with equal force would require an exception to be understood as to the operation of the other.

Nor can it with reason be said that there is any expression which indicates a desire on the part of the legislature to

limit the rule of construction as to registry statutes adopted by this court in *Westerly Savings Bank* v. *Stillman*. Rather must it be inferred from the absence of such provision that the legislature · was satisfied with that construction and did not desire to interfere with its continuance. *Westerly Savings Bank* v. *Stillman* was decided in 1889. The section relating to personal property mortgages now under consideration was first adopted in 1899. This court had said explicitly that, in equity at least, the construction of all registry statutes should be the same whether such statutes in terms provided that an unrecorded mortgage was valid as against a purchaser with notice or was silent on that subject. That had remained the settled rule of construction in our courts for ten years and yet this statute was passed without an attempt on the part of the legislature, by any language in the act, to neutralize or limit this established rule of construction. The case of *Westerly Savings Bank* v. *Stillman* must be regarded as the ruling authority in this state upon the question now under consideration and is decisive of the case at bar.

The view taken by the English Court of Chancery and by this court in *Westerly Savings Bank* v. *Stillman* is in agreement with the great weight of English and American authority.

In I Story's Equity Jurisprudence, the author in the course of his treatment of the subject of constructive fraud, says at Section 397: "It is upon the same ground that in countries where the registration of conveyances is required in order to make them perfect titles against subsequent purchasers, if a subsequent purchaser has notice at the time of his purchase of any prior unregistered conveyance, he shall not be permitted to avail himself of his title against that prior conveyance. This has been long the settled doctrine in courts of equity; and it is often applied in America, although not in England, in courts of law as a just exposition of the registry acts. The object of all acts of this sort is, to secure subsequent purchasers and mortgagees

against prior secret conveyances and incumbrances.    But where such purchasers and mortgagees have notice of any prior conveyance, it is impossible to hold that it is a secret conveyance by which they are prejudiced.    On the other hand the neglect to register a prior conveyance is often a matter of mistake or of overweening confidence in the grantor; and it would be a manifest fraud to allow him to avail himself of the power by any connivance with others to defeat such prior conveyance."

In *Patten* v. *Moore*, 32 New Hampshire, 382, two partners being the owners of certain standing timber executed a mortgage on the same to the complainant, but all the formalities required by law were not completed and the mortgage recorded until November 3rd, 1851.    On October 23d, 1851, one of the partners, who had purchased his copartner's interest, conveyed said timber to the respondent who had knowledge of the complainant's mortgage.    The respondent claimed the timber as a bona fide purchaser, alleging that the complainant's mortgage was invalid against him, it never having been completed and recorded till November 3rd, 1851.    The court said: . "The principle of equity is unquestioned, that one who buys property with notice of an existing right of a third person, either legal or equitable, shall be deemed to have made his purchase in bad faith, and to be guilty of a fraud, so that he will not be permitted to set up his purchase against such right." . . . "It is no answer to this to say that the mortgage was at that time invalid.    As between the parties, a mortgage is sufficient without any oath, and without either possession or recording.    Rev. Stat. 248, Ch. 132, § 7.    And in that case, if before, or at the time of his purchase, William Moore (the respondent) had notice that there was even a defective and voidable mortgage, as a *bona fide* purchaser, he was chargeable with notice of all the facts at that time existing relative to that mortgage, and at best would stand in no better position than Moore and Gage (said partners)."

In *Gooding* v. *Riley*, 50 N. H. 400, at 411, the court said: "The English registry acts provided that conveyances of land should be deemed fraudulent and void as against subsequent purchasers and mortgagees, unless a memorial of such conveyances was registered; but it was very soon the established doctrine in equity that such prior deed or incumbrance, though not registered, created an equitable title in the grantee, and that, as the object of these statute provisions was to protect subsequent purchasers and encumbrancers against secret conveyances, notice to them would be equivalent to registry. *Le Neve* v. *Le Neve*, 3 Atk. 646; and see *Dickerson* v. *Tillinghast*, 4 Paige Ch. 221.

"In such cases courts of equity lend their aid to protect the holders of such equitable titles against subsequent purchasers and others, with notices of such equity, as in all other cases where there is a prior equitable title which courts of equity would enforce. Whenever a party, who has purchased and paid for the property of another, has taken a promise to convey it, or has taken a conveyance which is good as between the parties, but not as to others for want of registration or the like, he will in equity be regarded as having the equitable title, which will prevail against a subsequent grantee having notice of it.

"A purchase with knowledge of such equity is everywhere regarded as made in bad faith; and this is a doctrine of equity, of universal application, holding that a purchaser cannot in conscience hold a legal estate so acquired, there being no equity united with it.

"In the case before us as made by the bill, Lawrence (the first mortgagee) parted with his money and received this mortgage in good faith; as between him and Haskill (the mortgagor), the title, both legal and equitable, passed. As to subsequent purchasers and mortgagees, he was clothed with the equitable title, and the attempt to sell the property afterwards to another, and thus defeat the equitable title before created, would on the part of Haskill be the grossest bad faith; and if the second mortgagee had notice of the

prior equity, he would be justly charged with participating in the fraud.

"Indeed, there is no doctrine of equity more generally recognized than that which denounces such a purchase as made in bad faith; and we are wholly unable to perceive any good reason why it should not be applied in its full force in a case like the one stated in the bill; and this we think accords with the adjudged cases in our own courts."

Under the authorities the complainant must be held guilty of fraud in knowingly entering into the transaction with the mortgagor, Miss Vaill, to defeat the legal and equitable rights of the respondent. The respondent in good faith had parted with his money and had received therefor the mortgage in question. In the sale of the chattels by Miss Vaill to the complainant, these two women, Miss Vaill as principal and the complainant as *particeps criminis,* were guilty of fraud involving moral turpitude in thus combining in the attempt to deprive this respondent of his security and to cheat him of his money justly due. It would be a most unheard of and monstrous exercise of the equity jurisdiction of this court to grant this complainant the relief which she seeks upon a claim based on her own moral delinquency and fraud. Such action by the court would be in disregard of the maxim that "he that hath committed iniquity shall not have equity."

The complainant's bill must be dismissed. On July tenth, 1914, at ten o'clock A. M., the respondent may present to this court a form of decree to be entered in the Superior Court dismissing the complainant's bill and awarding costs to the respondent.

JOHNSON, C. J., and BAKER, J., concurring.

VINCENT, J., dissenting. This is a suit in equity whereby the complainant seeks to restrain the respondent from taking possession of certain personal property and from foreclosing or treating as valid a certain mortgage upon the same and to have said mortgage delivered up and canceled.

A restraining order was issued which was continued after a hearing upon the motion for a preliminary injunction and is still in force. Subsequently, after the pleadings were closed and after a hearing in the Superior Court upon the entry of a final decree, the case was certified to this court under Sec. 35, Chap. 289, Gen. Laws of R. I., upon an agreed statement of facts.

From the facts, as stated, it appears that on or before September 28th, 1910, Julia M. Vaill, now deceased, executed and delivered to the respondent, the mortgage under consideration covering personal property then owned by Miss Vaill and located in New Shoreham, Rhode Island. The respondent never took possession of the mortgaged chattels nor did he have the said mortgage recorded within five days from the date of the signing thereof, but the same was placed on record in New Shoreham on October 26, 1910. Later, on July 18, 1911, Miss Vaill, by a bill of sale, sold and conveyed the chattels described in the said mortgage to the complainant who thereupon took, and has since retained, possession of the same.

The complainant at the time when she purchased the property—July 18, 1911—knew of the existence of the said mortgage to the respondent and that the same then appeared of record. The indebtedness for which the said mortgage was given has not been paid, the interest thereon is in default, and, therefore, the respondent claims the right to take possession of and sell the property covered by said mortgage under the provisions thereof. The respondent also claims that the mortgage is valid as to the complainant because the complainant knew of its existence and record prior to her alleged purchase of the property which the mortgage describes.

On the other hand, the complainant claims that said mortgage has no validity whatever, it not having been recorded within five days from the date of the signing thereof as required by Sec. 10, Chap. 258 of the Gen. Laws of 1909.

The case presents but a single issue, and that is, whether or not a mortgagee, who has neither taken possession of the mortgaged property nor recorded his mortgage within the time required by statute, can still maintain his mortgage as against the mortgagor's vendee who purchases the property with full knowledge of the existence of the mortgage. The statute which fixes the time within which mortgages of personal property shall be recorded is Sec. 10, Chap. 258, Gen. Laws of R. I., and is as follows: "Sec. 10. No mortgage of personal property hereafter made shall be valid as to the assignee in insolvency of the mortgagor, or any other person except the parties thereto and their executors and administrators, until possession of the mortgaged property be delivered to and retained by the mortgagee, or the said mortgage be recorded in the records of mortgages of personal property in the town or city where the mortgagor shall reside, if in this state; and if not in this state, then in the town where the property is at the time of making said mortgage; which said recording or taking and retention of possession as aforesaid shall be made or taken within five days from the date of the signing thereof: *Provided*, that nothing herein contained shall be so construed as to affect any transfer of property under bottomry or respondentia bonds, or of any ship or goods at sea or abroad, if the mortgagee shall take possession thereof as soon as may be after the arrival of the same in this state."

The respondent claims that, notwithstanding the specific terms of the statute, the recording of a personal property mortgage, after the expiration of more than five days from the date of the signing thereof acts as a constructive notice to those who may take a conveyance subsequent to such recording and that as against them such a mortgage would be valid.

Our statute, before quoted, contains the imperative provision that no mortgage of personal property shall be valid until the mortgagee shall take possession of the mortgaged property or until he shall record his mortgage, and that such

possession or recording shall take place within five days from the date upon which the mortgage is signed. As the court said in *Haythorn* v. *Van Keuren & Son*, 74 Atl. 502: "The presumption is that the word 'shall' in a statute is used in an imperative and not in a directory sense. If a different interpretation is sought, it must rest upon something in the character of the legislation or in the context which will justify a different meaning." In thus making the record of the mortgage imperative within a specified time, the legislature must have had some object in view and must have intended that the failure to record should have some bearing and some effect on the validity of the instrument. It seems to me that the legislature, in using the language which we find in the statute, intended that a mortgage which remained unrecorded for a period of five days should have no further legal existence, except as between the parties. The fixing of a definite period within which a mortgage must be recorded places the mortgage upon a different footing from mortgages made under statutes where no special time for recording is fixed. This difference has been recognized by this court in the case of *Burdick* v. *Coates*, 22 R. I. 410, in which the court, referring to the case of *Commercial Bank* v. *Colton*, 17 R. I. 226, used the following language: "The mortgage was recorded prior to the assignment, and there was no provision in the statute as to the time when it should be recorded. The present statute is quite different; and under a similar statute in Massachusetts it was held, in *Drew* v. *Streeter*, 137 Mass. 460, that an attachment made before the mortgage was recorded, even though the record was within the statutory period, took precedence of the mortgage."

In the later case of *Ziegler* v. *Thayer*, 34 R. I. 288, the court said in quoting from *In re Ronk*, 111 Fed. 154: "It is apparent that it was the purpose of the legislature to allow no valid claim, lien, or secret equity to be created on goods unless public disclosure was made either by delivery of the goods to the assignee or mortgagee and the retention thereof by him, or by recording the assignment or mortgage within 10

days. To hold otherwise would be to defeat the beneficial effect of the recording statute."

There are, however, some authorities which support the respondent's contention that recording, however long delayed, acts as constructive notice to those who take a conveyance subsequent to such recording. In support of this contention the respondent cites cases from Ohio, Kansas, Michigan, Texas and New York. In only three of these states, Kansas, Texas and Ohio, does the statute fix any time for recording. In Kansas and Texas the statute provides for recording "forthwith" and in Ohio within six months. The courts in those states hold that the later record of the mortgage is a notice to parties who may subsequently deal with the property in question.

In *Burdick* v. *Coates, supra,* this court held that a chattel mortgage could have no validity whatever if the mortgagee failed to take possession of the property or to record his mortgage within five days from the date of the signing thereof, quoting *Drew* v. *Streeter,* 137 Mass. 460.

The conclusions reached by this court in *Burdick* v. *Coates, supra,* is in accord with the decisions of the courts of many other states. See *Sheldon, Adm'r* v. *Connor,* 48 Me. 584; *Kennedy* v. *Shaw, et al.,* 38 Ind. 474; *Simpson* v. *Harris, et al.,* 21 Nev. 353; *Gassner* v. *Patterson, et al.,* 23 Cal. 299; *Sage* v. *Browning,* 51 Ill. 217; *The People* v. *Hamilton, et al.,* 17 Bradw. 599; *Lockwood* v. *Slevin, et al.,* 26 Ind. 124; *Parroski* v. *Goldberg,* 80 Wis. 339; *Bevans* v. *Bolton,* 31 Mo. 437; *Rawlings* v. *Bean, et al.,* 80 Mo. 614; *Garland* v. *Plummer,* 72 Me. 397; *Sidener* v. *Bible,* 43 Ind. 230; *McDowell, et al.* v. *Stewart,* 83 Ill. 538.

These authorities are equally applicable to another contention of the respondent that an unrecorded chattel mortgage is valid against a subsequent purchaser with actual knowledge of the mortgage.

The respondent also cites cases to the effect that an unrecorded conveyance of real estate is valid against a subsequent purchaser with notice of the prior conveyance. It

does not however, appear that the questions submitted in the cases cited by the respondent upon this point arose under any statute peremptorily fixing a time within which conveyances of real estate shall be recorded, but that they were determined by the well settled and well understood equitable principles governing such matters.

While, as before stated, there is authority supporting the respondent's contention regarding both constructive and actual notice, the weight of authority seems to support the law as laid down by this court in *Burdick* v. *Coates, supra,* and I see no reason for changing the views therein expressed regarding the interpretation of the statute in question.

I think that the complainant is entitled to a decree as prayed for in her bill of complaint.

PARKHURST, J., concurs in opinion of VINCENT, J.

*Eliot G. Parkhurst, Edwards & Angell,* for complainant.
*Irving Champlin, Hammill & Bradford,* for respondent.
*John C. Knowles,* of counsel.